# Matter of Martin CHAIREZ-Castrejon, Respondent

*Decided September 28, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The respondent's removability as an alien convicted of an aggravated felony was not established where section 76-10-508.1 of the Utah Code was not shown to be divisible with respect to the mens rea necessary for the offense to qualify as a crime of violence under 18 U.S.C. § 16(a) (2012), based on the Supreme Court's decisions in *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *Descamps v. United States*, 133 S. Ct. 2276 (2013). *Matter of Chairez*, 26 I&N Dec. 349 (BIA 2014), and *Matter of Chairez*, 26 I&N Dec. 478 (BIA 2015), clarified.

FOR RESPONDENT: Skyler Anderson, Esquire, Taylorsville, Utah

FOR THE DEPARTMENT OF HOMELAND SECURITY: Donald W. Cassidy, Associate Legal Advisor

BEFORE: Board Panel: PAULEY, MALPHRUS, and GREER, Board Members.

PAULEY, Board Member:

On October 30, 2015, the Attorney General ordered the Board to refer this matter to her for review in *Matter of Chairez and Sama*, 26 I&N Dec. 686 (A.G. 2015). In that order, the Attorney General also stayed our decisions in *Matter of Chairez* ("*Chairez I*"), 26 I&N Dec. 349 (BIA 2014), and *Matter of Chairez* ("*Chairez II*"), 26 I&N Dec. 478 (BIA 2015), declaring them to be nonprecedential and nonbinding during the pendency of her review. The Attorney General's review is now complete, and the record has been returned to us so that we may take "any appropriate action" in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). *Matter of Chairez and Sama*, 26 I&N Dec. 796, 796 (A.G. 2016).[1]

In *Mathis*, the Supreme Court clarified its earlier opinion in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and addressed the methodology for determining whether a criminal statute is "divisible." In accordance with our previous holding in *Matter of Chairez I*, we now clarify that the understanding of statutory "divisibility" embodied in *Descamps* and *Mathis*

---

[1] The Attorney General's order also returned to us the record of proceedings in *Matter of Sama*, which we will address in a separate order.

applies in immigration proceedings nationwide to the same extent that it applies in criminal sentencing proceedings.  *See Mathis*, 136 S. Ct. at 2253 n.3 (discussing aspects of the divisibility question as they arise in immigration proceedings).  Furthermore, we reiterate that Immigration Judges and the Board must follow applicable circuit law to the fullest extent possible when seeking to determine what *Descamps* and *Mathis* require. *See Matter of Chairez I*, 26 I&N Dec. at 354; *see also Matter of Chairez II*, 26 I&N Dec. at 481−82.  Finally, our decisions in *Chairez I* and *Chairez II* are superseded to the extent that they are inconsistent with *Descamps* and *Mathis*.  Applying *Descamps* and *Mathis* to the facts of this case, we will sustain the respondent's appeal in part and remand the record for further proceedings.

The background and procedural history of this case is set forth at length in our prior decisions.  The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States who was convicted in 2012 for discharge of a firearm in violation of section 76-10-508.1 of the Utah Code, a felony under State law for which he was sentenced to an indeterminate term of imprisonment not to exceed 5 years.  At all relevant times, section 76-10-508.1 has provided as follows, in pertinent part:

> Felony discharge of a firearm—Penalties
>
> (1) Except as [otherwise] provided . . . , a person who discharges a firearm is guilty of a third degree felony punishable by imprisonment for a term of not less than three years nor more than five years if:
>    (a) the actor discharges a firearm in the direction of any person or persons, knowing or having reason to believe that any person may be endangered by the discharge of the firearm;
>    (b) the actor, with intent to intimidate or harass another or with intent to damage a habitable structure . . . , discharges a firearm in the direction of any person or habitable structure; or
>    (c) the actor, with intent to intimidate or harass another, discharges a firearm in the direction of any vehicle.

The respondent was convicted of this offense after pleading guilty to an amended information that charged him broadly, by alleging the full statutory text of section 76-10-508.1(1).  The charging document did not specifically allege that the respondent violated any one portion of the statute to the exclusion of any other.

Based on the aforementioned conviction, the Immigration Judge found the respondent removable from the United States—and ineligible for most forms of relief from removal—as an alien convicted of an aggravated felony under sections 101(a)(43)(F) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(F) and

1227(a)(2)(A)(iii) (2012), namely, a "crime of violence" under 18 U.S.C. § 16 (2012) for which the term of imprisonment is at least 1 year.[2] In reviewing that determination, we employ the "categorical approach," which requires us to focus on the "elements" of section 76-10-508.1 of the Utah Code rather than the facts underlying the respondent's particular violation of that statute. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013).

An offense is a "crime of violence" under 18 U.S.C. § 16 if it is

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[3]

For purposes of this "crime of violence" definition, the word "use" denotes volition, *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), while "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010); *see also Matter of Guzman-Polanco*, 26 I&N Dec. 806 (BIA 2016).

Section 76-10-508.1 of the Utah Code is "categorically overbroad" relative to the definition of a "crime of violence" under 18 U.S.C. § 16(a). Specifically, sections 76-10-508.1(1)(b) and (c) define categorical "crimes of violence" under 18 U.S.C. § 16(a) because they have as elements the *intentional* use of violent physical force against the person or property of another, namely, the discharge of a firearm. *See Matter of Chairez I*, 26 I&N Dec. at 351. However, section 76-10-508.1(1)(a) does not define a categorical crime of violence because it permits conviction if the firearm was discharged intentionally, knowingly, or *recklessly*. In this respect, we note that section 76-10-508.1(1)(a) neither specifies a mental state with which the firearm must be discharged nor clearly expresses a legislative

---

[2] The Immigration Judge also found the respondent removable as an alien convicted of a firearms offense under section 237(a)(2)(C) of the Act. In *Matter of Chairez I*, 26 I&N Dec. at 355−58, we affirmed that determination, concluding that a violation of section 76-10-508.1 is a categorical firearms offense. Neither *Mathis* nor the Attorney General's decisions in this matter cast doubt on that determination, and—for the reasons previously stated in *Chairez I*—we therefore reaffirm that the respondent's conviction renders him removable under section 237(a)(2)(C) of the Act.

[3] The United States Court of Appeals for the Tenth Circuit, in whose jurisdiction this case arises, has held that 18 U.S.C. § 16(b) is unconstitutionally vague. *See Golicov v. Lynch*, No. 16-9530, 2016 WL 4988012, at *5–8 (10th Cir. Sept. 19, 2016). Therefore, our analysis is limited to determining whether the respondent's offense qualifies as a crime of violence under 18 U.S.C. § 16(a).

purpose to impose strict liability.  Under these circumstances, section 76-2-102 of the Utah Code provides that "intent, knowledge, or recklessness shall suffice to establish criminal responsibility."  Any one of those three mental states is a logical possibility as applied to the first clause of section 76-10-508.1(1)(a).  Although the "intentional" or "knowing" discharge of a firearm in the direction of another person would satisfy the requirements of 18 U.S.C. § 16(a), the United States Court of Appeals for the Tenth Circuit has held that *reckless* conduct does not involve the deliberate "use" of physical force.  *See Matter of Chairez I*, 26 I&N Dec. at 352 (citing *United States v. Zuniga-Soto*, 527 F.3d 1110, 1122–24 (10th Cir. 2008)).[4]

Because section 76-10-508.1 of the Utah Code does not define a categorical crime of violence, the aggravated felony charge cannot be sustained unless that statute is "divisible" relative to the definition of a crime of violence, in which case a further "modified categorical" inquiry would be appropriate.  In *Descamps*, the Supreme Court explained that a criminal statute is divisible only if it (1) lists multiple discrete offenses as enumerated alternatives or defines a single offense by reference to disjunctive sets of "elements," more than one combination of which could support a conviction, and (2) at least one (but not all) of those listed offenses or combinations of disjunctive elements is a "categorical match" to the relevant generic standard.  *See Descamps*, 133 S. Ct. at 2281, 2283.

*Mathis* reaffirms *Descamps* while clarifying an important point: disjunctive statutory language does not render a criminal statute divisible unless each statutory alternative defines an independent "element" of the offense, as opposed to a mere "brute fact" describing various means or methods by which the offense can be committed.  *Mathis*, 136 S. Ct. at 2248.[5]  The *Mathis* Court explained the distinction between "elements" and "brute facts" or "means" as follows:

---

[4]  The Supreme Court recently held that reckless assault involves the "use of physical force" within the meaning of the "misdemeanor crime of domestic violence" definition set forth at 18 U.S.C. § 921(a)(33)(A) (2012).  *See Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016) ("A person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally.").  In so holding, the Court did not take a position on whether 18 U.S.C. § 16(a) includes reckless behavior.  *See id.* at 2280 n.4.  Because the Tenth Circuit has held that reckless conduct is insufficient to constitute a crime of violence under 18 U.S.C. § 16, we will follow that authority in this case.  *See Zuniga-Soto*, 527 F.3d at 1122–24.

[5]  Prior to *Mathis*, the Tenth Circuit held in *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014), *abrogated by Mathis*, 136 S. Ct. at 2248, 2251 & n.1, that a criminal statute is "divisible" whenever it employs alternative or disjunctive statutory phrases.  *See Matter of Chairez II*, 26 I&N Dec. at 481–82.  Although circuit law is generally controlling in

(continued . . .)

"Elements" are the "constituent parts" of a crime's legal definition—the things the "prosecution must prove to sustain a conviction." At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty. Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements. (We have sometimes called them "brute facts" when distinguishing them from elements.) They are "circumstance[s]" or "event[s]" having no "legal effect [or] consequence": In particular, they need neither be found by a jury nor admitted by a defendant.

*Id.* (citations omitted).

Further, while conceding that the difference between "elements" and "brute facts" or "means" is not always easy to discern, the Court provided some guidance to help steer adjudicators toward sources of information that could help shed light on the distinction:

This threshold inquiry—elements or means?—is easy in this case, as it will be in many others. Here, a state court decision definitively answers the question . . . . When a ruling of that kind exists, a sentencing judge need only follow what it says. Likewise, the statute on its face may resolve the issue. If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] they must be elements. Conversely, if a statutory list is drafted to offer "illustrative examples," then it includes only a crime's means of commission. And a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means). Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list.

And if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself. As Judge Kozinski has explained, such a "peek at the [record] documents" is for "the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." *Rendon v. Holder*, 782 F.3d 466, [473−74 (9th Cir. 2015)] (opinion dissenting from denial of reh'g en banc). (Only if the answer is yes can the court make further use of the materials, as previously described.) Suppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a "building, structure, or vehicle". . . . That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. So too if those documents use a single umbrella term like "premises": Once again, the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by

_____

removal proceedings with respect to the contours of the categorical and modified categorical approaches, we are unable to follow *Trent* here because it was abrogated by *Mathis.*

referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime. Of course, such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy "*Taylor*'s demand for certainty" when determining whether a defendant was convicted of a generic offense. But between those documents and state law, that kind of indeterminacy should prove more the exception than the rule.

*Id.* at 2256−57 (footnote and citations omitted).

Under the approach to divisibility adopted in *Descamps* and *Mathis*, section 76-10-508.1(1)(a) of the Utah Code can be regarded as "divisible" into three separate offenses with distinct mental states—that is, intentional discharge of a firearm, knowing discharge of a firearm, and reckless discharge of a firearm—only if Utah law requires a unanimous jury verdict as to the *particular* mental state with which the accused discharged the firearm. It is evident that a Utah jury cannot lawfully convict a defendant for violating section 76-10-508.1(1)(a) without finding that he discharged a firearm with *some* culpable mental state. However, if a Utah jury can find a defendant guilty of violating the statute without coming to an agreement about the particular mental state with which he discharged the firearm, then it follows that intent, knowledge, and recklessness are not alternative "elements." Pursuant to *Mathis*, they are instead mere "brute facts"— alternative means by which the mens rea element can be proven.[6]

There are no Utah cases directly addressing whether intent, knowledge, and recklessness operate as alternative "elements" or mere "brute facts" in the context of section 76-10-508.1(1)(a). However, in *Chairez I* we found it suggestive that the Utah Supreme Court has *not* required jury unanimity where the single crime of second-degree murder can be committed in any of three separate manners, each with a different mens rea. *See Matter of Chairez I*, 26 I&N Dec. at 355 (citing *State v. Russell*, 733 P.2d 162, 164–68 (Utah 1987)). While Utah's second-degree murder jurisprudence is not authoritative in this context, it does support a reasonable inference that Utah courts would not require a unanimous jury verdict with respect to the particular mental state with which a defendant discharged a firearm under section 76-10-508.1(1)(a).

This reasonable inference is not refuted by any other source of authoritative State law or by the respondent's record of conviction, at which we have "peek[ed] . . . for 'the sole and limited purpose of determining whether [intent, knowledge, and recklessness are] element[s] of the

---

6   In that case, a conviction under section 76-10-508.1(1)(a) of the Utah Code would reflect that the accused necessarily discharged the firearm *at least recklessly*, but nothing more.

offense." *Mathis*, 136 S. Ct. at 2256; *see also* 8 C.F.R. § 1003.1(d)(3)(iv) (2016) (empowering the Board to take administrative notice of the contents of official documents). The amended information to which the respondent entered his guilty plea contains no mens rea allegation at all with respect to the respondent's discharge of a firearm, much less an allegation of one particular mental state to the exclusion of all others. Rather, it merely recapitulates the statutory language of section 76-10-508.1(1). Under the circumstances, we conclude that the respondent's removability under section 237(a)(2)(A)(iii) of the Act has not been proven by clear and convincing evidence.

In conclusion, although the respondent is removable by virtue of his conviction for a firearms offense, the evidence does not establish his removability as an alien convicted of an aggravated felony. For purposes of cancellation of removal, the respondent has carried his burden of proving the absence of any disqualifying aggravated felony conviction because section 76-10-508.1(1) of the Utah Code is overbroad and indivisible relative to the definition of an aggravated felony crime of violence under section 101(a)(43)(F) of the Act.[7] We will therefore vacate the Immigration Judge's decision in part and remand the record for further consideration of the respondent's eligibility for cancellation of removal and any other relief that may now be available to him.[8]

**ORDER:** The appeal is sustained in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[7] Because section 76-10-508.1(1) of the Utah Code is overbroad and indivisible relative to a crime of violence, we have no present occasion to decide whether an applicant for cancellation of removal can carry his burden of proving the absence of a disqualifying conviction when the statute of conviction *is* divisible but the record of conviction is inconclusive.

[8] In September 2015, the Immigration Judge issued a decision denying the respondent's application for adjustment of status in the exercise of discretion, and an appeal from that decision was pending before the Board when the Attorney General ordered us to refer the matter to her for review. The dismissal of the aggravated felony charge now renders the respondent eligible to apply for relief that was previously unavailable to him. To avoid piecemeal review and to ensure that the merits of the respondent's applications for relief are examined in light of the most up-to-date information available, we find it appropriate to remand the record for further consideration of the respondent's eligibility for relief from removal. We express no opinion as to whether the respondent merits any such relief.