# Matter of Martin CHAIREZ-Castrejon, Respondent

*Decided April 24, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

In determining whether a statute is divisible under *Mathis v. United States*, 136 S. Ct. 2243 (2016), Immigration Judges may consider or "peek" at an alien's conviction record only to discern whether statutory alternatives define "elements" or "means," provided State law does not otherwise resolve the question.

FOR RESPONDENT:  Skyler Anderson, Esquire, Taylorsville, Utah

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Matthew R. Hall, Senior Attorney

BEFORE:  Board Panel:  PAULEY and GREER, Board Members. Concurring Opinion: MALPHRUS, Board Member.

PAULEY, Board Member:

When this case was last before us in *Matter of Chairez*, 26 I&N Dec. 819 (BIA 2016), we sustained the respondent's appeal in part and remanded the record to the Immigration Judge.  The Department of Homeland Security ("DHS") has filed a motion asking us to reconsider that decision. The motion will be denied.

The respondent is a native and citizen of Mexico and lawful permanent resident of the United States.  He was convicted on December 3, 2012, of unlawfully discharging a firearm in violation of section 76-10-508.1 of the Utah Code, a felony for which he was sentenced to an indeterminate term of imprisonment of up to 5 years.  In *Matter of Chairez*, 26 I&N Dec. at 825, we held that the DHS did not prove that the respondent was removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of an aggravated felony crime of violence under 18 U.S.C. § 16 (2012) and section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2012).[1]

---

[1]  The Immigration Judge also concluded that the respondent is removable under section 237(a)(2)(C) of the Act because he was convicted of a categorical firearms offense, and we affirmed that determination.  *Matter of Chairez*, 26 I&N Dec. at 821 n.2.  The issue of the respondent's removability under section 237(a)(2)(C) of the Act is not before us.

We concluded that section 76-10-508.1 does not categorically define a crime of violence because it encompasses offenses committed with a mens rea of recklessness. *Matter of Chairez*, 26 I&N Dec. at 822 (citing *United States v. Zuniga-Soto*, 527 F.3d 1110, 1122–24 (10th Cir. 2008) (holding that reckless conduct does not involve the deliberate "use" of physical force required by the crime of violence definition)). We determined that even though section 76-10-508.1 encompasses offenses committed intentionally and knowingly, it is not divisible into three separate offenses with distinct mental states—that is, intentional, knowing, or reckless discharge of a firearm. *Id.* at 824–25 (citing *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016)). Because this alternative language did not render section 76-10-508.1 divisible relative to the definition of a crime of violence, we concluded that a modified categorical inquiry was not permitted. *Id.*

The DHS argues that we should have extended the Supreme Court's holding in *Voisine v. United States*, 136 S. Ct. 2272 (2016), and found that even "reckless" discharge of a firearm under section 76-10-508.1 is a crime of violence notwithstanding *Zuniga-Soto*, a decision of the United States Court of Appeals for the Tenth Circuit, in whose jurisdiction this case arises. Alternatively, the DHS argues that even if section 76-10-508.1 does not categorically define a crime of violence, we misapplied *Mathis* in two respects: (1) we improperly inferred that section 76-10-508.1 is indivisible from the fact that Utah law does not require a jury to be unanimous about the mental state of a defendant who is guilty of second-degree murder; and (2) we did not consider the respondent's plea agreement as evidence of the divisibility of section 76-10-508.1.

A motion to reconsider is a "request [to] reexamine [a] decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Matter of O-S-G-*, 24 I&N Dec. 56, 57 (BIA 2006) (citations omitted). The DHS's motion will be denied because it does not identify an adequate reason for reconsideration.

First, while we have the authority to apply intervening Supreme Court precedent that supersedes contrary circuit court authority, we may not extend the rationale of a Supreme Court decision in the face of contrary precedent from the controlling circuit. *See Matter of Carachuri-Rosendo*, 24 I&N Dec. 382, 385, 387–88 (BIA 2007) (holding that we must follow circuit precedent regarding the meaning of criminal statutes and clarifying that the circuits must decide whether their precedents have been implicitly overruled by the Supreme Court), *aff'd*, *Carachuri-Rosendo v. Holder*, 570 F.3d 263 (5th Cir. 2009), *rev'd on other grounds*, 560 U.S. 563 (2010).

As we noted in our prior decision, the Court in *Voisine* held only that reckless assault involves the "use of physical force" within the meaning of the "misdemeanor crime of domestic violence" definition in 18 U.S.C.

§ 921(a)(33)(A) (2012).  *Matter of Chairez*, 26 I&N Dec. at 822 n.4.  In so holding, the Court stated that it did not intend to resolve whether reckless conduct satisfies the "use of physical force" requirement under 18 U.S.C. § 16.  *Voisine*, 136 S. Ct. at 2280 n.4.  The Court explained that "[c]ourts have sometimes given [18 U.S.C. §§ 16 and 921(a)(33)(A)] divergent readings in light of differences in their contexts and purposes," and it left open the possibility that courts could interpret the two provisions differently "with respect to their required mental states."  *Id.*  Because there is no necessary conflict between *Voisine* and *Zuniga-Soto*, we are obliged to follow *Zuniga-Soto* unless and until it is overruled by a court of competent jurisdiction.  *Matter of Carachuri-Rosendo*, 24 I&N Dec. at 385, 387–88.  This is not a proper case for us to express an opinion on the merits of the DHS's arguments as to how the law may or should evolve after *Voisine*.  Rather, since the Tenth Circuit has not overturned *Zuniga-Soto* in the wake of *Voisine*, it remains authoritative precedent in this case.

We also disagree with the DHS's assertion that we misapplied *Mathis* when we drew a "reasonable inference" that section 76-10-508.1 is indivisible by looking to analogous Utah case law in the context of second-degree murder.  *Matter of Chairez*, 26 I&N Dec. at 824 (citing *State v. Russell*, 733 P.2d 162, 164–68 (Utah 1987)).  As the Court in *Mathis* made clear, the divisibility of a State statute depends on whether State law establishes that statutory alternatives are discrete "elements" or alternative "means" of committing an offense.  *Mathis*, 136 S. Ct. at 2256.  Where State case law does not address the distinction between elements and means in the context of a specific criminal statute, we see nothing unreasonable or impermissible about seeking guidance in cases interpreting statutes with similar language and structure.  As we stated in our prior decision, we are unaware of any "Utah cases directly addressing whether intent, knowledge, and recklessness operate as alternative 'elements' or mere [means] in the context of section [76-10-508.1]."  *Matter of Chairez*, 26 I&N Dec. at 824.

Finally, we cannot adopt the DHS's view that the respondent's plea agreement—which indicates that the respondent's offense involved a "knowing" discharge of a firearm—is probative evidence of the divisibility of section 76-10-508.1 under *Mathis*.  Pursuant to *Mathis*, we may "peek" at the respondent's conviction record for the "sole and limited purpose" of deciding whether statutory alternatives define discrete "elements"—or facts that must be proven to a jury beyond a reasonable doubt in order to convict.  *Mathis*, 136 S. Ct. at 2256–57 (citation omitted).  Thus, at the "peeking" stage of our inquiry, we are not concerned (as we would be under a modified categorical inquiry) about which facts were proved or admitted.  Instead, we are concerned only with those facts that had to be proved or admitted in order to convict.  *Id.* at 2248.

Standing alone, the admission in the respondent's plea agreement that he knowingly discharged a firearm is not itself sufficient to reliably establish that this admitted fact is an "element" in the narrow sense contemplated in *Mathis*. The Court has instructed that we must view such findings or admissions in conjunction with the charges to which they correspond in order to ensure that a found or admitted fact is truly an "element" of the State statute of conviction. *See id.* at 2257. Thus, while the facts admitted in a plea agreement may shed light on the divisibility of a State statute when those facts are tethered to what is alleged in a charging document, that is not the case here.

We need not decide what documents are appropriate for a "peek," aside from the documents referenced by the Court in *Mathis*—namely, the relevant jury instructions and the charging document filed by the prosecutor. *See id.* If, for example, a prosecutor charges a defendant in the disjunctive with "intentionally, knowingly, or recklessly" discharging a firearm, that would be "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* This is so even if the defendant subsequently signs a plea agreement that specifies only one of those three mental states to the exclusion of the others. On the other hand, if a prosecutor charges a defendant only with one of the three enumerated mental states—for instance, "knowingly" discharging a firearm—that would tend to indicate that each mental state is a distinct element.[2]

As we noted in our prior decision, "[t]he amended information to which the respondent entered his guilty plea contains no mens rea allegation at all with respect to the respondent's discharge of a firearm, much less an allegation of one particular mental state to the exclusion of all others." *Matter of Chairez*, 26 I&N Dec. at 825. Since the admission of a "knowing" mental state contained in the respondent's plea agreement is not tethered to any fact charged in the amended information, that admission does not establish the divisibility of section 76-10-508.1 under *Mathis*. We therefore discern no legal or factual error in our prior decision in this case and will deny the DHS's motion to reconsider. *See Matter of O-S-G-*, 24 I&N Dec. at 57.

**ORDER:** The motion to reconsider is denied.

---

[2]   Notably, the information that may be gleaned by "peek[ing]" at the conviction record does not stand on an equal footing with "authoritative sources of state law." *Mathis*, 136 S. Ct. at 2256. In fact, the Court made clear that such a "peek" may be resorted to only "if state law fails to provide clear answers" with respect to divisibility. *Id.*

*CONCURRING OPINION*:  Garry D. Malphrus, Board Member

I concur in the reasoning and the result in this case.  I write separately to note that while the Department of Homeland Security ("DHS") is incorrect that the respondent's plea agreement renders his statute of conviction divisible relative to the generic definition of a crime of violence under 18 U.S.C. § 16 (2012), it is correct that the respondent's plea agreement shows that he pled to knowingly—rather than recklessly—discharging a firearm in the direction of a person.  Under established law, this would constitute a crime of violence under 18 U.S.C. § 16, and thus an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2012).

However, we may not consider the respondent's conviction records in this or any other case, unless we first determine that the statute of conviction is divisible under the narrow circumstances prescribed by the Supreme Court in *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *Descamps v. United States*, 133 S. Ct. 2276 (2013), where the Court interpreted and extended its approach to divisibility in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005).  This is so even when the relevant conviction documents are in the record and it is undisputed that they establish the respondent's actual conduct.  *Mathis*, 136 S. Ct. at 2256 (noting that "how a defendant actually committed [the] offense" is irrelevant to the divisibility analysis).

Whether Congress would have intended this result is an entirely different question.  *See id.* at 2258 (Kennedy, J., concurring) (noting that Congress did not intend this strict approach when the record makes it clear that the defendant committed the generic crime); *see also id.* at 2268 (Alito, J., dissenting) (same).  This is especially true for immigration proceedings, which are civil, rather than criminal, in nature.  The Supreme Court's approach to divisibility in *Taylor* and *Shepard* was created to protect Sixth Amendment rights in the context of Federal sentencing proceedings and to prevent "the specter of mini-trials" on collateral issues during sentencing, but those legal and policy concerns do not apply in the same manner in the context of immigration proceedings.  *Prudencio v. Holder*, 669 F.3d 472, 490 (4th Cir. 2012) (Shedd, J., dissenting) (citation omitted).  It is not at all clear that holding a mini-trial to determine what conduct—within the range of conduct punished by a statute—an alien actually committed is any more onerous than deciding whether a particular statute provides separate elements of a crime or alternative means of committing the offense.  *See Mathis*, 136 S. Ct. at 2264 (Breyer, J., dissenting).  There are often no clear answers to whether a fact is an element or a means, even after an exhaustive

search, and "[w]hat was once a simple matter will produce a time-consuming legal tangle." *Id.*

Immigration Judges frequently make findings on collateral issues such as determining whether an offense is a "particularly serious crime" in the course of adjudicating an asylum application. *See* section 208(b)(2)(A)(ii) of the Act, 8 U.S.C. § 1158(b)(2)(A)(ii) (2012). Also, Immigration Judges routinely consider probative evidence of facts and circumstances outside the conviction record when considering whether a respondent with a criminal history warrants relief from removal in the exercise of discretion. *See, e.g.*, *Matter of Silva-Trevino*, 26 I&N Dec. 826, 837 (BIA 2016); *Matter of Mendez*, 21 I&N Dec. 296, 303 n.1 (BIA 1996).

Here, we must presume that the respondent committed the least of the acts criminalized within the range of conduct punishable under his statute of conviction. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013). This is true even though the respondent's plea agreement indicates that he did more—specifically, that he knowingly discharged a firearm at another, and thus he committed an aggravated felony crime of violence. *See id.*

The approach to divisibility required by *Descamps* and *Mathis* will result in immigration proceedings being terminated for many aliens who have committed serious crimes in the United States. *See, e.g.*, *Ramirez v. Lynch*, 810 F.3d 1127, 1134–38 (9th Cir. 2016) (reversing the order of removal upon concluding that the California statute proscribing felony child abuse was not divisible, and thus it was improper to consider the conviction records in determining whether the alien's conviction constituted an aggravated felony crime of violence).[1] It is for Congress to determine whether this approach is consistent with its intent regarding the immigration consequences of such criminal conduct.

---

[1] While we are not terminating proceedings in this case because the respondent is removable under section 237(a)(2)(C) of the Act, 8 U.S.C. § 1227(a)(2)(C) (2012), termination would be necessary if the respondent had been convicted under the California firearms statute that corresponds to the Utah statute at issue here. *See United States v. Aguilera-Rios*, 769 F.3d 626, 635–37 (9th Cir. 2014). In fact, while section 237(a)(2)(C) of the Act provides that an alien is removable for a firearms offense, that provision is inapplicable in any jurisdiction where there is a realistic probability of successful prosecutions under the statute involving antique firearms. *See id.* at 637. This is true even if such prosecutions are exceedingly rare and it is undisputed that the alien's conviction *did not* involve an antique firearm. *See Moncrieffe*, 133 S. Ct. at 1684–85.