# Matter of Emmanuel LAGUERRE, Respondent

*Decided January 20, 2022*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Because the identity of the "controlled dangerous substance" possessed is an element of the crime of possession of a controlled dangerous substance under section 2C:35-10(a)(1) of the New Jersey Statutes Annotated, the statute is divisible with respect to the specific substance possessed, and the record of conviction can be examined under the modified categorical approach to determine whether that substance is a controlled substance under Federal law.

FOR RESPONDENT:  Timothy R. Block, Esquire, Edison, New Jersey

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Kyle T. Simpson, Associate Legal Advisor

BEFORE:  Board Panel:  WILSON and GORMAN, Appellate Immigration Judges. Concurring Opinion:  O'CONNOR, Appellate Immigration Judge.

GORMAN, Appellate Immigration Judge:

In a decision dated August 10, 2020, an Immigration Judge granted the respondent's motions to terminate his removal proceedings.  The Department of Homeland Security ("DHS") has appealed from this decision.[1]  The DHS's appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Haiti who was admitted to the United States as a lawful permanent resident.  On March 8, 2007, the respondent was convicted of possession of a controlled dangerous substance in violation of section 2C:35-10(a)(1) of the New Jersey Statutes Annotated. Based on this conviction, the DHS charged him with removability under section 237(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B)(i) (2018), as a respondent convicted of a violation of a State

---

[1]  The Board heard oral argument in this case and the parties submitted supplemental briefing.  We acknowledge with appreciation the briefs and oral arguments prepared by the representatives of both parties.

law "relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." The respondent filed a motion to terminate proceedings, arguing that the DHS could not demonstrate by clear and convincing evidence that his offense involved a controlled substance under Federal law. The DHS filed an opposition to the respondent's motion to terminate and, based on the respondent's conviction for stalking, lodged an additional charge of removability under section 237(a)(2)(E)(i) of the Act, as a respondent convicted of a crime of stalking. The respondent subsequently filed a motion to terminate with respect to this additional charge of removability. The Immigration Judge found the respondent was not removable under either charge and granted the respondent's motions to terminate.

On appeal, the DHS challenges the Immigration Judge's decision to terminate proceedings, arguing that the respondent's conviction for possession of a controlled dangerous substance in violation of section 2C:35-10(a)(1) of the New Jersey Statutes Annotated is a conviction for a controlled substance violation that renders him removable as charged under section 237(a)(2)(B)(ai) of the Act.[2] Whether the respondent's drug conviction renders him removable as charged is a legal question we review de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021).

## II. ANALYSIS

To determine whether the respondent's New Jersey drug offense renders him removable, we employ the categorical approach to determine whether the elements of his New Jersey statute of conviction match those of the generic definition of an offense relating to a controlled substance set forth at section 237(a)(2)(B)(i) of the Act. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). To categorically match this generic definition, the respondent's conviction must have necessarily involved, as an element, a substance listed under the Federal Controlled Substances Act. *See Mellouli v. Lynch*, 575 U.S. 798, 813 (2015); *Matter of P-B-B-*, 28 I&N Dec. 43, 45–46 (BIA 2020). However, if the respondent's State statute of conviction is categorically overbroad, we must consider whether it is divisible—that is, whether it "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 570 U.S. 254, 257 (2013). If the statute is divisible, we may employ a modified categorical approach, which permits us to examine the respondent's record of conviction to determine "what crime, with what

---

[2]   The DHS does not appeal the Immigration Judge's determination that the respondent is not removable under section 237(a)(2)(E)(i) of the Act.

elements, [he] was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

At all relevant times, section 2C:35-10(a) provided, in relevant part, as follows:

> It is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance or controlled substance analog . . . . Any person who violates this section with respect to:
>    (1)  A controlled dangerous substance, or its analog, classified in Schedule I, II, III or IV other than those specifically covered in this section, is guilty of a crime of the third degree . . . .

The parties do not dispute the Immigration Judge's determination that the New Jersey schedules include dextrorphan, while the Federal schedules do not. Because there is a mismatch between the controlled substances in the New Jersey and Federal schedules, the dispositive issue in this case is whether the identity of the controlled dangerous substance involved in a violation of section 2C:35-10(a)(1) is an "element," rendering the statute divisible and susceptible to a modified categorical inquiry, or merely an alternative "means" of violating the statute. *Mathis*, 136 S. Ct. at 2253 (distinguishing between statutory "elements" and the "alternative means of fulfilling one (or more)" of those elements).[3]

"'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 2248 (citation omitted). "At a trial, [elements] are what the jury must find beyond a reasonable doubt to convict the defendant," and "at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.* However, "means" merely "spell[] out various factual ways of committing some component of the offense," which a jury is not required to find and a defendant is not required to admit. *Id.* at 2249. In other words, "elements" must be "necessarily found" by a jury or "necessarily admitted" to by a defendant, whereas "means" or "non-elemental fact[s]" are "*not* necessary to support a conviction." *Id.* at 2255 (citations omitted).

In *Mathis*, the Supreme Court set forth three inquires for determining whether items listed in an alternatively phrased statute are "elements" or "means." First, the Court instructed adjudicators to ascertain whether there

---

[3]  We note that these "elements" versus "means" inquiries can be exceedingly complicated, and we must make them in an increasing number of cases, both in published decisions, *see, e.g.*, *Matter of Dikhtyar*, 28 I&N Dec. 214, 216–17 (BIA 2021); *Matter of P-B-B-*, 28 I&N Dec. at 46–47; *Matter of Gonzalez Lemus*, 27 I&N Dec. 612, 613 (BIA 2019); *Matter of Chairez*, 27 I&N Dec. 21, 23 (BIA 2017), and in scores of unpublished decisions.

is a State court decision that "definitively answers the question." *Id.* at 2256. Second, the Court instructed adjudicators to determine if the "statute on its face" resolves the issue. *Id.* Lastly, "if state law fails to provide clear answers," the Court instructed adjudicators to "peek" at the record of conviction, including the "indictment and correlative jury instructions." *Id.* at 2256–57. If the conviction record "reference[s] one alternative term to the exclusion of all others," that supports a determination that the "statute contains a list of elements, each one of which goes toward a separate crime." *Id.* at 2257.

## A. State Case Law

Relying on *State v. Edwards*, 607 A.2d 1312 (N.J. Super. Ct. App. Div. 1992), the Immigration Judge found that the specific controlled dangerous substance underlying the respondent's conviction constitutes a "means" of violating section 2C:35-10(a)(1), rather than an "element" of the statute. The Immigration Judge's reliance on *Edwards* was understandable because the decision contains language stating that "the nature of the [controlled dangerous substance], like the quantity, is not an element of the offense," and that "[t]he particular substance possessed is relevant only for grading and is not part of the description of the prohibited conduct in the definition of the offense." *Id.* at 1313. However, when these statements are considered in the context of the specific issue the court in *Edwards* analyzed, it becomes much less clear whether the case "definitively answers" the "elements" versus "means" question. *Mathis*, 136 S. Ct. at 2256. The issue in *Edwards*, 607 A.2d at 1313, was whether the State was required to prove that the "defendant knew precisely what controlled dangerous substance was possessed," as opposed to knowing that the substance possessed was a controlled dangerous substance.

The court in *Edwards* held that the State was only required to prove that the defendant knew she possessed a controlled dangerous substance. In so holding, the court relied on *State v. Torres*, 563 A.2d 1141 (N.J. Super. Ct. App. Div. 1989). In that case, the court held that the State was not required to prove that a defendant knew the specific quantity of drugs he or she possessed under New Jersey's statute criminalizing possession with intent to distribute a controlled dangerous substance. Instead, the court stated, "[T]he jury must find that [the] defendant manufactured, distributed, dispensed or possessed the relevant quantity or quality of [controlled dangerous substance] by proof beyond a reasonable doubt." *Id.* at 1145. This language indicates that the quantity or quality of a controlled dangerous substance is an "element" of the statute, as contemplated by *Mathis*, 136 S. Ct. at 2248, which specifically defined "elements" as those things "the jury must find

beyond a reasonable doubt to convict the defendant." However, in the very next sentence, the court in *Torres*, 563 A.2d at 1145, "further [held] that the quantity and quality are not *elements* of the offense and, therefore, the State need not prove and the jury need not find that the defendant knew the quantity or the quality of the controlled dangerous substances involved." (Emphasis added.)

Our review of *Edwards* and *Torres*, which were decided more than 20 years before *Mathis*, suggests that those State decisions did not give the term "element" the precise meaning and significance the Supreme Court did in *Mathis*. This is evident from the statements in *Torres* that even though a jury must find a defendant possessed the relevant quantity or quality of a controlled dangerous substance "by proof beyond a reasonable doubt," that quantity or quality "are not elements of the offense." 563 A.2d at 1145. It is difficult to reconcile these statements with the Supreme Court's definition of an "element" in *Mathis*. Considering the context in which *Edwards* and *Torres* used the term "element," including the specific legal questions at issue in those cases, we conclude that both decisions are ambiguous at best in resolving whether the identity of the controlled dangerous substance possessed is an "element" of the respondent's statute of conviction or a "means" of violating that statute. Accordingly, we conclude that New Jersey does not have a published case that "definitively answers" whether the identity of the controlled dangerous substance possessed is an "element" of section 2C:35-10(a)(1). *Mathis*, 136 S. Ct. at 2256.

We nevertheless find it significant that the New Jersey Supreme Court has upheld convictions for separate counts of possession of a controlled dangerous substance in violation of section 2C:35-10(a)(1) where the defendant possessed *multiple* controlled dangerous substances during a *single* act. *See, e.g.*, *State v. Evans*, 193 A.3d 843, 845–46, 852 (N.J. 2018) (reinstating the defendant's conviction for a count of possession of heroin and a count of possession of cocaine, which were discovered during a search incident to arrest); *State v. Mann*, 2 A.3d 379, 382, 386 (N.J. 2010) (reinstating conviction for possession of cocaine and ecstasy, which were seized during a single incident). If the identity of the controlled dangerous substance was a "means" of committing the offense as opposed to an "element," these New Jersey Supreme Court decisions sustaining multiple counts of possession of a controlled dangerous substance would violate the constitutional prohibition against double jeopardy.

As we noted in a similar case, "[t]he Double Jeopardy Clause . . . provides that no person may be tried more than once 'for the same offense.'" *Matter of P-B-B-*, 28 I&N Dec. at 48 (quoting *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018)). For purposes of double jeopardy, offenses are "considered

separate and distinct . . . if they involve distinct '*elements*.'"  *Id.* (quoting *Currier*, 138 S. Ct. at 2153).

In *Matter of P-B-B-*, 28 I&N Dec. at 45, this Board determined that the identity of the drug possessed was an "element" of attempted possession of a dangerous drug for sale under section 13-3407 of the Arizona Revised Statutes.  We found support for our determination in an Arizona case that "upheld a defendant's conviction for *multiple* counts of possession of a dangerous drug under section 13-3407 where he possessed methamphetamine *and* other dangerous drugs—namely, clonazepam and diazepam."  *Id.* at 47 (citing *State v. Tavasci*, No. 1 CA-CR 07-0643, 2008 WL 2315690, at *2 (Ariz. Ct. App. June 3, 2008)).  We observed that "if the identities of the specific substances underlying the defendant's offense . . . were not alternative 'elements' of section 13-3407, . . . the court's decision to sustain multiple counts of possession of a dangerous drug would have violated the constitutional prohibition against double jeopardy."  *Id.* at 47–48; *see also Matter of Gonzalez Lemus*, 27 I&N Dec. 612, 614–15 (BIA 2019) (holding that where a State has "prosecuted as separate offenses a single act involving . . . multiple controlled substances. . . . the elements of proof required as to" an offense involving one drug "are not the same as those essential" to proving an offense involving a different drug (emphasis omitted)).

We applied similar reasoning in *Matter of Dikhtyar*, 28 I&N Dec. 214 (BIA 2021), where we concluded that the identity of the controlled substance possessed is an "element" of section 58-37-8(2)(a)(i) of the Utah Code.  We relied, in part, on *State v. Karren*, 438 P.3d 18, 19–21 (Utah Ct. App. 2018), where a Utah court "upheld a defendant's conviction for two counts of possession of a controlled substance under section 58-37-8(2)(a)(i) where he was arrested after methamphetamine and marijuana were discovered in his backpack."  *Matter of Dikhtyar*, 28 I&N Dec. at 220–21.  We observed that

> [t]he respondent has not explained how, given the prohibition against double jeopardy, a defendant could be convicted of multiple counts of possession of a controlled substance where the defendant committed a single act of possession involving separate substances, if the identity of the specific controlled substance possessed was simply an alternative means of committing the offense, rather than an element of section 58-37-8(2)(a)(i).

*Id.* at 221.  Given the elements-based test for double jeopardy, the New Jersey Supreme Court cases cited above support our view that the identity of the controlled dangerous substance possessed is an "element" of the respondent's statute of conviction.

In support of his argument that the controlled dangerous substance possessed is a "means," rather than an "element," of section 2C:35-10(a)(1),

the respondent argues that New Jersey has convicted a defendant of possession of a controlled dangerous substance based on an indictment that listed multiple controlled dangerous substances under each count. Specifically, he cites *State v. Gibson*, 722 A.2d 960, 962 (N.J. Super. Ct. App. Div. 1999), where a defendant had been convicted of one count of possession of "cocaine and/or heroin" and a second count of possession of "cocaine and/or heroin" with the intent to distribute.[4]

We are not persuaded that *Gibson* supports the respondent's argument that the identity of the controlled dangerous substance possessed is a "means" of violating section 2C:35-10(a)(1). The court in *Gibson* reversed the convictions in that case and remanded for a corrected judgment. It also noted that a "special verdict can reveal whether the jurors found defendant possessed one or both substances." *Id.* at 966 n.2. However, since there was no special verdict in that case, the court concluded both counts "must merge" because it did "not know if the jury found that defendant possessed heroin, cocaine, or both." *Id.* at 966. Therefore, while New Jersey may charge a defendant with multiple controlled dangerous substances in the same count, *Gibson* indicates that the jury is still required to identify which particular controlled substance, or substances, was or were possessed, when a defendant is convicted of separate counts of possession, relating to the possession of a one or more substances.

## B. Statutory Language

Having considered the relevant State court decisions, we next apply the second step in the *Mathis* inquiry: examining the language of the State statute of conviction. The Immigration Judge observed that the only disjunctive language in section 2C:35-10(a)(1) with respect to the specific controlled dangerous substance is the phrase a "controlled dangerous substance, or its analog, classified in Schedule I, II, III or IV other than those specifically covered in this section."

We conclude that the structure of section 2C:35-10(a)(1) does not clearly resolve whether the controlled dangerous substance is an "element" or "means" of the offense. While section 2C:35-10(a) is broken into different subsections providing different punishments, the particular subsection the respondent was convicted under, (a)(1), classifies all possession offenses of controlled dangerous substances listed under schedules I, II, III, and IV as

---

[4] We note that *Gibson* is the only published case the respondent cites in support of this argument.

crimes of the third degree.[5]   However, to the extent that the specific controlled dangerous substance involved must be identified to determine under which subsection of section 2C:35-10(a) a defendant was convicted, this supports our finding that the identity of the substance is an "element." *See Matter of P-B-B-*, 28 I&N Dec. at 47 (stating that where a statute sets forth "statutory alternatives carry[ing] different punishments," depending on the identity of the substance, these alternatives "must be elements" (quoting *Mathis*, 136 S. Ct. at 2256)).

The DHS also argues that section 2C:35-10(a)(1) is similar to the Pennsylvania drug statute that was found to be divisible in *United States v. Henderson*, 841 F.3d 623 (3d Cir. 2016).  In that case, the United States Court of Appeals for the Third Circuit, in whose jurisdiction this case arises, examined title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes and the penalty provision at section 780-113(f)(1) of the Pennsylvania Consolidated Statutes.

---

[5]   At the time of the respondent's conviction, section 2C:35-10(a) of the New Jersey Statutes Annotated provided as follows:

> a. It is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance or controlled substance analog, unless the substance was obtained directly, or pursuant to a valid prescription or order form from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by P.L. 1970, c. 226 (C.24:21-1 et seq.). Any person who violates this section with respect to:
>> (1)  A controlled dangerous substance, or its analog, classified in Schedule I, II, III or IV other than those specifically covered in this section, is guilty of a crime of the third degree except that, notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine of up to $35,000.00 may be imposed;
>> (2)  Any controlled dangerous substance, or its analog, classified in Schedule V, is guilty of a crime of the fourth degree except that, notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine of up to $15,000.00 may be imposed;
>> (3)  Possession of more than 50 grams of marijuana, including any adulterants or dilutants, or more than five grams of hashish is guilty of a crime of the fourth degree, except that, notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine of up to $25,000.00 may be imposed; or
>> (4)  Possession of 50 grams or less of marijuana, including any adulterants or dilutants, or five grams or less of hashish is a disorderly person.
> Any person who commits any offense defined in this section while on any property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of any such school property or a school bus, or while on any school bus, and who is not sentenced to a term of imprisonment, shall, in addition to any other sentence which the court may impose, be required to perform not less than 100 hours of community service.

Section 780-113(a)(30) prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." The penalty provision, in turn, provides, in pertinent part, that "[a]ny person who violates clause . . . (30) of subsection (a) with respect to . . . [a] controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years." 35 Pa. Stat. and Cons. Stat. § 780-113(f)(1) (West 2021) (footnote omitted).

The Third Circuit found that section 780-113(f)(1) "disjunctively incorporates all of the 'controlled substances classified in Schedule I or II' as the substances for which a defendant may receive a maximum sentence of fifteen years for possession with intent to deliver." *Henderson*, 841 F.3d at 626–27 (citation omitted). The court observed that "[i]n order to identify the 'substances classified in Schedule I or II,' Section 780-113(f)(1) cross-references Section 780-104 of [the statute], which provides an exhaustive list of controlled substances that fall within each schedule of prohibited drugs." *Id.* at 627. The court found the statute's cross-reference to an exhaustive list of specific substances "creat[ed] several alternative elements; not separate means of commission." *Id.* at 630.

We agree with the DHS that like the Pennsylvania statute at issue in *Henderson*, section 2C:35-10(a)(1) of the New Jersey Statutes Annotated similarly cross-references an exhaustive list of substances. In particular, the statute cross-references schedules I, II, III, and IV of the New Jersey drug schedules, which provide a finite list of controlled dangerous substances. While not clear evidence that the identity of the controlled dangerous substance possessed is an "element" of the respondent's State statute of conviction, the Third Circuit's determination that a similarly-structured statute is divisible supports our conclusion that the identity of the controlled dangerous substance is an "element" of section 2C:35-10(a)(1).[6]

---

[6] Other circuits have found that the identity of the specific substance is an "element" of statutes that cross-reference drug schedules containing an exhaustive list of substances. For example, the First Circuit concluded in *Swaby v. Yates* that a Rhode Island drug statute was "divisible by the type of drug," in part, because the statute assigned "'different punishments,' based on the class of a drug, and then 'exhaustive[ly]' list[ed] the individual drugs by type on the state drug schedules." 847 F.3d 62, 68 (1st Cir. 2017) (first alteration in original) (citations omitted). Likewise, the Ninth Circuit in *Coronado v. Holder* determined that a California drug statute was divisible because it "identifies a number of controlled substances by referencing various California drug schedules and statutes and criminalizes the possession of any one of those substances," effectively creating "'several different . . . crimes,' and not separate 'means of commission.'" 759 F.3d 977, 985 (9th

Citing *Hillocks v. Att'y Gen. U.S.*, 934 F.3d 332 (3d Cir. 2019), the respondent argues that his statute of conviction is indivisible because section 2C:35-10(a)(1) is not alternatively phrased; it instead merely requires possession of a controlled dangerous substance or controlled substance analog without alternatively listing the substances it criminalizes. We find *Hillocks* to be distinguishable and disagree with the respondent that his statute of conviction is not alternatively phrased.

In *Hillocks*, the court addressed whether a conviction for criminal use of a communication facility in violation of title 18, section 7512(a) of the Pennsylvania Consolidated Statutes was a conviction for an aggravated felony for illicit trafficking of a federally controlled substance under section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (2018). The Pennsylvania statute provided as follows:

> A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under [35 Pa. Stat. and Cons. Stat. § 780-101 et seq.], known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa. Stat. and Cons. Stat. § 7512(a) (West 2015) (footnote omitted). The court found that section 7512(a) was indivisible, in part, because the statute "does not have enumerated categories that suggest alternate elements." *Hillocks*, 934 F.3d at 344. By contrast, section 2C:35-10(a)(1) cross-references four enumerated drug schedules in the alternative, suggesting that the specific identity of the substances listed in each schedule are alterative "elements."

Finally, we agree with the DHS that the relevant legislative history supports our view that the New Jersey Legislature intended the identity of the controlled dangerous substance possessed to be a statutory "element" of section 2C:35-10(a)(1). In its declaration of policy and legislative findings with regard to the Comprehensive Drug Reform Act of 1987, the Legislature stated: "[I]t is the policy of this State to distinguish between drug offenders based on the seriousness of the offense, considering principally the nature, quantity and purity of the controlled substance involved . . . ." N.J. Stat. Ann. § 2C:35-1.1(c) (West 1987).

---

Cir. 2014) (citations omitted). *But see Johnson v. Barr*, 967 F.3d 1103, 1109 (10th Cir. 2020) (concluding that although a Colorado drug statute setting forth "alternative schedule groupings carry[ing] different punishments . . . . may be divisible as to the particular schedules, [it] is indivisible as to the identity of the particular controlled substance").

## C.  Record of Conviction

Because New Jersey case law and the language of the statute of conviction support our finding that the identity of the controlled dangerous substance possessed is an "element" of the statute, but do not "provide clear [or definitive] answers," we may "peek" at the respondent's record of conviction "for 'the sole and limited purpose of determining whether" the controlled dangerous substances listed in section 2C:35-10(a)(1) are "element[s] of the offense.'"  *Mathis*, 136 S. Ct. at 2256–57 (second alteration in original) (citation omitted).

The indictment in the respondent's case reflects that he was charged with possessing the controlled dangerous substance of cocaine.  Because this charging document "referenc[es] one alternative [controlled dangerous substance] to the exclusion of all others," the *Mathis* "peek" supports our view that the identity of the controlled dangerous substance possessed is an "element" of section 2C:35-10(a)(1), as opposed to a "means" of violating the statute.  *Id.* at 2257.

## III.  CONCLUSION

We therefore conclude that the identity of the specific controlled dangerous substance possessed is an "element" of section 2C:35-10(a)(1).  Thus, the statute is divisible with respect to the identity of the specific substance possessed, and we may examine the respondent's record of conviction under a modified categorical analysis to determine whether that substance is a controlled substance under Federal law.  *See Matter of Dikhtyar*, 28 I&N Dec. at 222; *Matter of P-B-B-*, 28 I&N Dec. at 50; *Matter of Gonzalez Lemus*, 27 I&N Dec. at 616.  As noted, the conviction record reflects that the respondent was convicted of possessing cocaine, which is a federally controlled substance.  *See* 21 U.S.C. § 812, schedule II(a)(4) (2018).  As a consequence, the respondent's conviction for possession of a controlled dangerous substance under section 2C:35-10(a)(1) of the New Jersey Statutes Annotated is a conviction for a controlled substance violation that renders him removable as charged under section 237(a)(2)(B)(i) of the Act.  Accordingly, the DHS's appeal from the Immigration Judge's decision to terminate these proceedings is sustained, the respondent's removal proceedings are reinstated, and the record is remanded to allow the respondent to apply for any relief for which he may be eligible.

**ORDER:**  The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:**   The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING OPINION*:  Blair T. O'Connor, Appellate Immigration Judge

I join the excellent majority opinion and its conclusion that the identity of the controlled dangerous substance is an element of New Jersey drug offenses.  I write separately to note the inordinate complexity of the legal question we have just answered.  While the Supreme Court indicated that the "threshold inquiry [of] elements or means" would be "easy . . . in many" cases, *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016), we unfortunately have not found that to be so in practice.  Instead, our experience time and time again has been that "[w]hat [should be] a simple matter [instead has become] a time-consuming legal tangle."  *Id.* at 2264 (Breyer, J., dissenting).  Our determination here is a case in point.  Cocaine is the only substance listed on the indictment to which the respondent pled guilty.  Yet, rather than simply acknowledging a simple fact which is plainly before us— that the respondent stands convicted of possessing cocaine, a federally controlled substance—the categorical approach requires us to engage in an extremely complicated analysis of whether the identity of the controlled substance possessed is an element or means of violating section 2C:35-10(a)(1) of the New Jersey Statutes Annotated.  Only if it is an element can we then refer to the indictment to which the respondent pled.  This entire process would leave the casual observer shaking his or her head.  But for immigration adjudicators, trying to navigate through legal minefields such as this is an all too common occurrence.

All of this is apparently necessary to "preclud[e] the relitigation of past convictions [by Immigration Judges] long after the fact."  *Moncrieffe v. Holder*, 569 U.S. 184, 200–01 (2013).  But that is not an actual concern in many immigration cases involving criminal issues, including this one, where the record of conviction that is already before the Immigration Judge clearly indicates that the respondent was convicted of the generic offense.  There is nothing to relitigate in a case such as this.  Yet, rather than taking a minute to acknowledge the evidence that is already before them, Immigration Judges (and the Board) are required to engage in "an endless gauntlet of abstract legal questions."  *United States v. Chapman*, 866 F.3d 129, 137 (3d Cir. 2017) (Jordan, J., concurring) (citation omitted).  The fact that we do so in civil proceedings, where the respondent has no right to a jury trial under the Sixth Amendment, is all the more remarkable.  *See Pereida v. Wilkinson*, 141

S. Ct. 754, 767 (2021) ("Sixth Amendment concerns are not present in the immigration context.").

I point all this out to emphasize that determinations like this are far from easy, and they consume precious time and resources for an immigration court system that is already facing an unprecedented backlog of cases. Performing a modified categorical analysis in a case such as this is far less "onerous than deciding whether a particular statute provides separate elements of a crime or alternative means of committing the offense." *Matter of Chairez*, 27 I&N Dec. 21, 25 (BIA 2017) (Malphrus, concurring). Yet here we are. As was recently acknowledged by Judge Park of the United States Court of Appeals for the Second Circuit, "the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice." *United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (en banc) (Park, J., concurring) (collecting cases). There must be a better path forward.