COLLOTON, Circuit Judge.
Ribelino Avendano, a native and citizen of El Salvador, petitions for review of a decision of the Board of Immigration Appeals. After an immigration judge ordered Avendano removed to El Salvador, the Board on administrative appeal concluded that Avendano was ineligible for cancellation of removal because he had *733 been convicted of a crime involving moral turpitude. The Board also rejected his request to remand the case for the immigration judge to consider claims for asylum, withholding of removal, and relief under the Convention Against Torture. We conclude that the Board permissibly categorized Avendano’s offense of making terroristic threats in Minnesota as a crime involving moral turpitude, and that his remaining arguments are without merit. We therefore deny Avendano’s petition.
I.
Avendano entered the United States from El Salvador illegally in 1998. He later received temporary protected status and protection from removal under 8 U.S.C. § 1254a based on the Attorney General’s determination that El Salvador was “unable, temporarily, to handle adequately the return of its nationals,” due to a series of severe earthquakes. Designation of El Salvador Under Temporary Protected Status Program, 66 Fed.Reg. 14,214 (Mar. 9, 2001) (internal quotation omitted). Avendano’s attorney told the immigration judge that Avendano lost protected status following his conviction in 2007 for driving while impaired. Before the incident giving rise to removal proceedings, he resided for several years in Minnesota with his live-in girlfriend, whom he considered his wife, and their three United States citizen children.
In January 2012, during an argument witluhis girlfriend in the presence of their children, Avendano grabbed a knife and told his girlfriend to follow him into the bathroom. Avendano’s girlfriend instructed one of the children to call the police; officers came and arrested Avendano. He pleaded guilty to making terroristic threats in violation of Minn.Stat. § 609.713 subd. 1. That statute, in relevant part, forbids “threatening], directly or indirectly, to commit any crime of violence with purpose to terrorize another ... or in a reckless disregard of the risk of causing such terror.” A threat, as used in the statute, “is a declaration of an intention to injure another or [her] property by some unlawful act.” State v. Schweppe, 306 Minn. 395, 237 N.W.2d 609, 613 (1975). At his plea hearing, Avendano claimed he was threatening only to commit suicide, but it was an element of the crime that he threatened another, and he admitted that his girlfriend reasonably felt threatened by his actions.
The Department of Homeland Security initiated removal proceedings several months later. Through his first counsel, Avendano conceded that he was removable and that making terroristic threats was a crime involving moral turpitude that precludes cancellation of removal. The immigration judge determined that Avendano should be removed to El Salvador.
On administrative appeal, represented by new counsel, Avendano disputed that his Minnesota crime involved moral turpitude. He also sought a remand for the immigration judge to consider either temporary protected status or asylum and related benefits. A request for asylum is deemed also to constitute a request for withholding of removal. 8 C.F.R. § 1208.3(b).
The Board determined that Avendano had been convicted of a crime involving moral turpitude and was therefore ineligible for cancellation of removal. The Board also declined to remand for the immigration judge to. consider asylum, explaining that Avendano failed to meet the rigorous standards for a motion to reopen. In addition, the Board cited the immigration judge’s conclusion that Avendano’s theory for asylum and withholding of removal based on fear of gang recruitment in El Salvador was foreclosed by decisions of the *734 Board and this court. The Board explained that Avendano was ineligible for temporary protected status as a consequence of his felony conviction, 8 C.F.R. § 1244.4(a), and rejected any claim for relief under the Convention Against Torture as inadequately alleged.
Avendano petitions for review, challenging the Board’s decision on cancellation of removal and its refusal to remand for further consideration of his claims for asylum, withholding of removal, and relief under the Convention Against Torture.
II.
A.
The Immigration and Nationality Act provides that an alien who. is convicted of a crime involving moral turpitude is ineligible for cancellation of removal, where the offense is punishable by a sentence of one year or longer. 8 U.S.C. §§ 1229b, 1182(a)(2)(A)(i)(I). Congress did not define “crime involving moral turpitude,” and the meaning of the phrase was left “to future administrative and judicial interpretation.” Franklin v. INS, 72 F.3d 571, 572 (8th Cir.1995) (quotation omitted).
In Chanmouny v. Ashcroft, 376 F.3d 810 (8th Cir.2004), we upheld the Board’s decision that an alien’s offense of making terroristic threats in Minnesota was a crime involving moral turpitude. In that case, we assumed for the sake of analysis that the Minnesota statute on terroristic threats was “divisible” in the sense that term has been used by the Board, id. at 813 — that is, a statute that “contains some offenses which involve moral turpitude and others which do not.” Id. at 812 (quoting In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999)). The Supreme Court in Descamps v. United States, — U.S.-, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), used the term “divisible” differently to mean a statute that “sets out one or more elements of the offense in the alternative.” Id. at 2281. The Minnesota statute is divisible in the Descamps sense, because it provides alternative culpable mental states: “purpose to terrorize” and “reckless disregard of the risk of causing ... terror.” Minn. Stat. § 609.713 subd. 1. The alien in Chanmouny was convicted of acting with the “purpose to terrorize.” 376 F.3d at 813-814.
Our opinion in Chanmouny explained that this court had approved the Board’s “longstanding general definition” of a crime involving moral turpitude, which included “acts accompanied by ‘a vicious motive or a corrupt mind.’ ” Id. at 814 (quoting In re Ajami, 22 I. & N. Dec. at 950). Applying that definition, we held that the Minnesota offense of “threatening a crime of violence against another person with the purpose of causing extreme fear” fell “within the category of offenses requiring a vicious motive or evil intent.” Id. Thus, the alien had been convicted of a crime involving moral turpitude. It was unnecessary to decide “whether the recklessness prong of the Minnesota statute implicates a crime of moral turpitude.” Id. at 813.
In this case, Avendano was convicted under the recklessness prong of the same statute: He was guilty of threatening to commit a crime of violence in reckless disregard of the risk of causing terror in his girlfriend. In assessing whether that offense is a crime involving moral turpitude, the Board observed that since Chanmouny, “jurisprudence on the recklessness issue has evolved.” Attorney General Mukasey issued a comprehensive opinion in Matter of Silvar-Trevino, 24 I. & N. Dec. 687 (A.G.2008), “clarifying the concept of moral turpitude and articulating a method-. ology for determining whether a particular offense is a crime involving moral turpitude.” Matter of Louissaint, 24 I. & N. *735 Dec. 754, 756 (BIA 2009). “According to the Attorney General, a crime involving moral turpitude involves reprehensible conduct committed with some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness.” Id. at 756-57 (citing Silvo-Trevino, 24 I. & N. Dec. at 706 & n. 5).
The Board ruled that in light of Silvar-Trevino and Louissaint, Avendano’s offense of uttering terroristic threats in reckless disregard of the risk of causing terror “involves the reprehensible conduct of terrorizing another person with a culpable mental state, and is a turpitudinous offense.” Therefore, Avendano was ineligible for cancellation of removal.
Avendano asserts that it was not enough for the Board to find that his “reprehensible conduct” was committed with “reckless disregard.” He argues that to qualify as a crime involving moral turpitude, the mental state “must be accompanied by a vicious motive or corrupt mind,” which Avendano describes as “the second prong” of the governing definition. He draws on the Board’s 1999 statement in Ajami, quoted by this court in Chanmouny, that “ ‘[a]mong the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.’ ” 376 F.3d at 812 (quoting Ajami, 22 I. & N. Dec. at 950).
The Board, however, does not require the presence of “a vicious motive or a corrupt mind” as an essential element of a crime involving moral turpitude. Ajami itself said only that accompaniment of a vicious motive or a corrupt mind was “among the tests” used to categorize a crime, implying that there were other tests as well. More recently, the Attorney General opined that a finding of moral turpitude “requires that a perpetrator have committed the reprehensible act with some form of scienter,” Silvar-Trevino, 24 I. & N. Dec. at 706 (emphasis added), a basic definition that “has generated little if any disagreement by reviewing circuit courts.” Bobadilla v. Holder, 679 F.3d 1052, 1054 (8th Cir.2012). The Board subsequently ruled that “some degree of scienter” includes “specific intent, deliberateness, willfulness, or recklessness.” Louissaint, 24 I. & N. Dec. at 757 (emphasis added). This court likewise has said that “the presence of absence of a corrupt or vicious mind is not controlling.” Hemandez-Perez v. Holder, 569 F.3d 345, 348 (8th Cir.2009) (internal quotation omitted).
As this court observed in Franklin, “the BIA decided years ago that when criminally reckless conduct requires a conscious disregard of a substantial and unjustifiable risk to the life or safety of others, although no harm was intended, the crime involves moral turpitude, for immigration purposes.” 72 F.3d at 572; see, e.g., Matter of Leal, 26 I. & N. Dec. 20, 23 (BIA 2012). The “reckless disregard” required to violate the Minnesota terroristic threats statute corresponds with the Board’s contemplation of recklessness: “Recklessness requires deliberate action in disregard of a known, substantial risk.” State v. Bjergum, 771 N.W.2d 53, 57 (Minn.Ct.App. 2009).
This court has concluded that the Board reasonably defined “crime involving moral turpitude” to encompass offenses committed with a mental state of recklessness. Franklin, 72 F.3d at 573. The Board was thus not required to find in addition that Avendano acted with a “vicious motive” or a “corrupt mind.” It was permissible for the Board, consistent with Silvar-Trevino, to conclude that Avendano’s admission that he acted with reckless disregard of the risk that he would cause terror in his girlfriend was sufficient to satisfy the scienter requirement for turpitudinous offenses.
*736 Avendano does not challenge the Board’s conclusion that threatening a crime of violence with the risk of terrorizing another person is “reprehensible conduct” within the meaning of Silvar-Trevino’s definition of a crime involving moral turpitude. In situations where an alien offender’s scienter is recklessness, some decisions of the Board and this court have inquired whether the alien’s offense also involves an “aggravating factor” that qualifies the offense as a crime involving moral turpitude. In Silvctr-Trevino, however, the Attorney General did not embrace that formulation. Instead, seeking to “rearticulate[] with greater clarity” the Board’s definition, the Attorney General made clear that a crime involving moral turpitude must involve “reprehensible conduct and some degree of scienter.” 24 I. & N. Dec. at 689 n. 1.
Since Silva-Trevino, the Board has explained that “when we have held that a ‘recklessness’ mens rea required either serious bodily injury or some other aggravating factor to establish moral turpitude, it was in the specific context of assault offenses.” Matter of Ruiz-Lopez, 25 I. & N. Dee. 551, 554 (BIA 2011); see, e.g., Godinez-Arroyo v. Mukasey, 540 F.3d 848 (8th Cir.2008). In a non-assault case after Silva-Trevino, the Board found unpersuasive an alien’s contention that an offense of attempting to elude a police vehicle — committed with reckless disregard for the lives or property of others — must be coupled with the infliction of serious bodily injury as an aggravating factor. Ruiz-Lopez, 25 I, & N. Dec. at 554. In any event, the Attorney General in Silva-Trevino was not bound to follow the Board’s previous construction of the statute, see Nat’l Cable & Tel. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 981, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), and the Attorney General’s decision to focus on “reprehensible conduct,” without a separate inquiry into “aggravating factors,” is a reasonable interpretation of the statute.
Avendano did not raise in this court an argument along the lines advanced by the partial dissent, and it is therefore waived. See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir.2004); Fed. RApp. P. 28(a)(8)(A). Avendano urged application of a modified categorical approach only in service of his contention that an offense committed in reckless disregard must be accompanied by a vicious motive or corrupt mind. The government responded to this argument, and we have concluded that Avendano’s contention is without merit. If an alien in a future case wishes to assert that making a bomb threat in a school or making a threat to kill out of “transitory anger” — with reckless disregard of the risk of causing terror — is not necessarily reprehensible conduct, post, at 739-40, and that the Minnesota statute therefore reaches conduct that does not involve moral turpitude, then it is open to the alien to urge that position before the Board. The parties have not joined that issue in this appeal.
B.
Avendano also seeks review of the Board’s denial of his request for a remand to the immigration judge to consider whether he is eligible for asylum and withholding of removal based on his fear of gang violence and gang recruitment in El Salvador. This court has no jurisdiction to review final orders of removal against aliens who have committed crimes involving moral turpitude, 8 U.S.C. § 1252(a)(2)(C), except to review constitutional questions or other issues of law. Id. § 1252(a)(2)(D); see Hanan v. Mukasey, 519 F.3d 760, 763 (8th Cir.2008). Because Avendano was convicted of a‘crime involving moral turpitude, we have jurisdiction *737 only if his challenge raises a constitutional issue or a question of law. Purwantono v. Gonzales, 498 F.3d 822, 824 (8th Cir.2007).
In denying Avendano’s request for a remand, the Board explained that a motion to remand filed during the pendency of an administrative appeal “must satisfy the same rigorous standards as a motion to reopen.” See Matter of Ige, 20 I. & N. Dec. 880, 884 (BIA 1994). One of those standards forbids reopening for the purpose of allowing the alien to apply for any form of discretionary relief, “if it appears that the alien’s right to apply for such relief was fully explained to him ... and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.” 8 C.F.R. § 1003.2(c)(1).
Asylum is a form of discretionary relief. 8 U.S.C. § 1158(b)(1). The Board ruled that Avendano’s opportunity to seek asylum-related relief was addressed at the former hearing, and that he did not meet the standard for reopening based on new circumstances. Any challenge to this factual determination does not present a question of law, so we lack jurisdiction to consider Avendano’s claim relating to asylum.
Withholding of removal, by contrast, is a form a mandatory relief. 8 U.S.C. § 1231(b)(3)(A). The Board concluded that Avendano failed to demonstrate that he was “prima facie eligible” for withholding of removal. The Board recounted the immigration judge’s statement that if Avendano had sought withholding of removal based on fear of gang violence and gang recruitment in El Salvador, then the claim would have failed under precedent of the Board and this court.
An alien seeking withholding of removal must show that his life or freedom would be threatened based on a protected ground. These grounds include political opinion and membership in a particular social group. Id. This court held in Con-stanza v. Holder, 647 F.3d 749 (8th Cir. 2011) (per curiam), however, that “persons resistant to gang violence are too diffuse to be recognized as a particular social group.” Id. at 754 (internal quotation omitted). Similarly, Marroquin-Ochoma v. Holder, 574 F.3d 574 (8th Cir.2009), held that opposition to a gang was not necessarily political, so the petitioner had not established that a gang’s threats to her were based on her political opinion so as to constitute persecution. Id. at 578-79. And in Menjivar v. Gonzales, 416 F.3d 918 (8th Cir.2005), we held that substantial evidence supported the Board’s denial of a claim based on persecution due to gang violence, because the petitioner had not established that the government of El Salvador inflicted or was unable or unwilling to control the harm from gangs. Id. at 921-22. The immigration judge and the Board concluded that Avendano’s claim would fail under these precedents.
Avendano does not challenge the Board’s legal conclusion that claims for withholding of removal based on fear of “gang recruitment” and “gang violence” have been rejected by this court. He contends, rather, that the Board should have afforded him an opportunity to testify about the details of his fear, so that the Board could determine whether his case is governed by the precedents. The Board’s determination whether Avendano presented sufficient grounds to reopen a hearing for that purpose, however, does not present a question of law or a constitutional claim over which we have jurisdiction. Hanan, 519 F.3d at 763. Avendano likewise raises no question of law concerning the Board’s denial of relief under the Convention Against Torture.
The petition for review is denied.