*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0395**

Ribelino Alberto Avendano, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 9, 2015
Affirmed
Hooten, Judge**

Dakota County District Court
File No. 19HA-CR-12-391

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Jessica Bierwerth, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this postconviction appeal seeking relief from his 2012 conviction of terroristic threats, appellant argues that he should be allowed to withdraw his guilty plea because

defense counsel gave him constitutionally insufficient advice regarding the immigration consequences of his guilty plea. We affirm.

## FACTS

Appellant Ribelino Alberto Avendano illegally entered the United States from El Salvador in 1998. *Avendano v. Holder*, 770 F.3d 731, 733 (8th Cir. 2014). He later received temporary protected status and protection from removal under a federal program designed to assist illegal immigrants from El Salvador. *Id.*

In February 2012, the state charged Avendano with one count of terroristic threats, alleging that he threatened to kill his live-in girlfriend. Avendano pleaded guilty. At the plea hearing, Avendano waived his trial rights and established a factual basis for the plea. Defense counsel then questioned him about the possible immigration consequences of the plea:

> Q: We have spent a great deal of [time] talking about possible immigration consequences, correct?
> A: Yes.
> Q: Included in this plea petition is a portion addressing that, correct?
> A: Yes.
> Q: Now, you're here with permission to work?
> A: Yes.
> Q: So you're here legally, and you have to renew that permission every certain period of time?
> A: Yes.
> Q: You're aware that this plea may affect your immigration status in some form or fashion. We don't know. I have some suspicions, and we have talked about that, but that has nothing to do with this court, but you do know that there may be consequences, and we talked about that a great deal; is that correct?
> A: Yes.

2

The prosecutor then questioned Avendano:

> Q: Mr. Avendano, I understand that you have talked with your attorney a great deal about the possible immigration consequences. You understand, as a result of this plea, one of those possible consequences could be deportation?
> A: Yes.

The district court then questioned him:

> Q: Sir, here is the situation on that last section as far as immigration, deportation, things like that. You won't be able to come back and say, [j]udge, I want my plea withdrawn because they are deporting me, and I didn't think they would. Otherwise, I would never have entered a plea like this. So if you do get deported, you're running the risk based on your plea here today. I won't withdraw this plea because of the decision of the federal government. Do you understand that?
> A: Yes.

The plea petition also referred to the possible immigration consequences of the plea: "My attorney has told me and I understand that if I am not a citizen of the United States this plea of guilty may result in deportation, exclusion from admission to the United States of America or denial of citizenship." Avendano signed the plea petition, which the district court received into evidence. The district court accepted Avendano's plea, adjudicated him guilty of terroristic threats, and imposed a probationary sentence.

Several months later, the Department of Homeland Security initiated removal proceedings based on this conviction. *Id.* In July 2014, Avendano sought to withdraw his guilty plea by filing a pro se petition for postconviction relief. He argued that he received ineffective assistance of counsel because defense counsel failed to advise him that a plea of guilty to terroristic threats would lead to "mandatory deportation."

The postconviction court denied Avendano's request to withdraw his plea. It found that there was no evidence in the record indicating "that the deportation consequences of [Avendano's] guilty plea were clear" or that Avendano "would be automatically or mandatorily deported or that deportation was virtually certain." The postconviction court determined that Avendano was "adequately warned by his counsel, the prosecutor and the [c]ourt that deportation was a possibility." It concluded, therefore, that the plea was voluntary and intelligent, and denied the petition without an evidentiary hearing. This appeal followed.

### D E C I S I O N

Avendano argues that his defense counsel gave him constitutionally insufficient advice regarding the immigration consequences of his guilty plea.

When direct appeal is no longer available, a person convicted of a crime who claims that the conviction violated his rights may file a postconviction petition to vacate and set aside the judgment. Minn. Stat. § 590.01, subd. 1 (2012). "In postconviction proceedings, the burden is on the petitioner to establish, by a fair preponderance of the evidence, facts that warrant relief." *Williams v. State*, 692 N.W.2d 893, 896 (Minn. 2005). We review a postconviction court's denial of a petition for relief for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted).

A defendant "must" be allowed to withdraw his or her plea if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest

4

injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, a guilty plea must be accurate, voluntary, and intelligent. *Id.* Ineffective assistance of counsel renders a guilty plea involuntary and unintelligent. *See Butala v. State*, 664 N.W.2d 333, 341 (Minn. 2003); *see also Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369 (1985).

Avendano argues that defense counsel failed to provide effective assistance in the plea process because defense counsel did not advise him that a conviction of terroristic threats would subject him to "mandatory deportation." As a result, he argues, his plea was neither voluntary nor intelligent.

We analyze ineffective assistance of counsel claims under the two-pronged analysis of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "First, the defendant must prove that counsel's representation fell below 'an objective standard of reasonableness.'" *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). "Second, the defendant must prove that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

Avendano claims that defense counsel's assistance fell below an objective standard of reasonableness under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). In *Padilla*, the Supreme Court held that the Sixth Amendment requires that a noncitizen defendant be informed of the deportation risks associated with pleading guilty. *Id.* at 1482, 1486. The content of the advice required varies depending on the immigration

statute applicable to the guilty plea in question. *Id.* at 1483. When the deportation consequences of a plea are "not succinct and straightforward," defense counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* But, when the deportation consequences of a plea are "truly clear" and defense counsel can "easily determine[]" those consequences "simply from reading the text" of the immigration statute, "the duty to give correct advice" about the likelihood of deportation is "equally clear." *Id.*

Avendano argues that his conviction of terroristic threats[1] under Minn. Stat. § 609.713, subd. 1 (2010), satisfies the Immigration and Nationality Act's definition of a "crime involving moral turpitude" and is therefore a presumptively deportable offense. *See* 8 U.S.C. § 1227(a)(2)(A)(i) (2006). In support of this argument, Avendano cites his own appeal from the deportation order of the Board of Immigration Appeals (BIA), in which he made the same argument. *Avendano*, 770 F.3d at 733. In affirming the BIA's order deporting Avendano, the federal court of appeals stated that because Congress did not define "crime involving moral turpitude," "the meaning of the phrase was left to future administrative and judicial interpretation." *Id.* at 734 (quotation omitted). And, in grappling with the issue of whether Avendano's conviction of terroristic threats constituted moral turpitude under its administrative and caselaw precedent, the three-judge panel disagreed as to the appropriate administrative and caselaw test that was to be applied in making such determination. *See id.* at 738–40 (Kelly, J., dissenting).

---

[1] As of May 12, 2015, "terroristic threats" has been renamed "threats of violence." 2015 Minn. Laws ch. 21, art. 1, § 109, at 234 (amending Minn. Stat. § 609.713 (2014)).

Here, unlike in *Padilla* and as demonstrated by the divided opinion in *Avendano*, the deportation consequences of a plea to terroristic threats are "not succinct and straightforward," and Avendano's defense counsel at the time of his plea and conviction could not have ascertained the deportation consequences of Avendano's plea "simply from reading the text of the statute." *Padilla*, 130 S. Ct. at 1483. In this case, then, all that was required under *Padilla* was that defense counsel, at the time of the plea, inform Avendano that pleading guilty to the offense "may carry a risk of adverse immigration consequences." *Id.*

The record amply establishes that Avendano was repeatedly informed of this risk, and therefore defense counsel's performance was not objectively unreasonable. *See Padilla*, 130 S. Ct. at 1483. Because defense counsel's performance was not objectively unreasonable, Avendano has not shown that he received ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The district court did not abuse its discretion by rejecting Avendano's claim that his plea was invalid and denying his postconviction petition.

**Affirmed.**