## Matter of Haji Osman SALAD, Respondent

*Decided January 2, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of making terroristic threats in violation of section 609.713, subdivision 1, of the Minnesota Statutes is categorically a crime involving moral turpitude.

FOR RESPONDENT: John Robert Bruning, Esquire, St. Paul, Minnesota

FOR THE DEPARTMENT OF HOMELAND SECURITY: Laura W. Trosen, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Acting Chairman; LIEBOWITZ, Board Member; NOFERI, Temporary Board Member.

NOFERI, Temporary Board Member:

In a decision dated January 17, 2019, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2012), as an alien who has been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of misconduct, and denied his applications for relief from removal. The respondent has appealed from that decision. The Department of Homeland Security ("DHS") has also appealed, challenging the Immigration Judge's determination that one of the respondent's offenses was not a crime involving moral turpitude. The DHS's appeal will be sustained, and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Somalia, who was admitted to the United States as a refugee in 2001 and adjusted his status to that of a lawful permanent resident on October 4, 2005. On June 15, 2010, he was convicted of burglary in violation of section 609.582, subdivision 3, of the Minnesota Statutes, and of making terroristic threats in violation of section 609.713, subdivision 1. He was convicted on June 29, 2010, of giving a false name to a police officer in violation of section 171.22, subdivision 1(8).

The Immigration Judge's finding of removability was based on the respondent's convictions for burglary and giving a false name to a police officer. The respondent challenges that finding, arguing that the offense of giving a false name to a police officer is not a crime involving moral turpitude. The DHS asserts that the Immigration Judge improperly held that the crime of making terroristic threats does not categorically involve moral turpitude.

During the pendency of the appeal, the respondent filed a motion to remand and terminate the proceedings, accompanied by supporting documentation. He argues that because the two convictions that the Immigration Judge found were for crimes involving moral turpitude have since been vacated by the Minnesota criminal courts, we should terminate his proceedings or remand with instructions to terminate. The DHS opposes termination and seeks a remand for the Immigration Judge to make findings in the first instance regarding the vacatur of those two convictions. With its opposition, the DHS also lodged an additional charge that the respondent is removable as an alien convicted of an aggravated felony under section 237(a)(2)(A)(iii) of the Act based on a fourth conviction, and it requested a remand. *See* 8 C.F.R. § 1003.30 (2019) (providing that the DHS may lodge additional charges at any time during removal proceedings).

We will address the unsettled issue appealed by the DHS. In light of our determination that the offense of making terroristic threats in violation of section 609.713, subdivision 1, of the Minnesota Statutes is categorically a crime involving moral turpitude, we will remand the record to the Immigration Judge for further proceedings to address the respondent's removability under section 237(a)(2)(A)(ii) of the Act, as well as any amended charges or other issues presented.[1]

## II. ANALYSIS

### A. Crimes Involving Moral Turpitude

To determine whether a particular offense involves moral turpitude, we employ the categorical approach, which requires us to focus on the elements of the offense and the minimum conduct that has a realistic probability of being prosecuted under the statute at issue, rather than the alien's actual conduct. *Matter of Silva-Trevino*, 26 I&N Dec. 826, 831 (BIA 2016); *accord Gomez-Gutierrez v. Lynch*, 811 F.3d 1053, 1058 (8th Cir. 2016). Under this

---

[1] The respondent also states on appeal that he "apprises the Board that the [current Immigration Judge] may have had an inherent conflict of interest requiring recusal." On remand, the respondent may raise the issue of recusal before the Immigration Judge in the first instance.

test, assessing the minimum conduct criminalized by the statute is "not an invitation to apply 'legal imagination' to the state offense." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Specifically, there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* "If a violation of the statute of conviction is not categorically a crime involving moral turpitude, the next step is to determine whether the statute is divisible so that the modified categorical approach may be applied." *Matter of Mendez*, 27 I&N Dec. 219, 221 (BIA 2018) (citing *Matter of Silva-Trevino*, 26 I&N Dec. at 833; *Matter of Chairez*, 26 I&N Dec. 819, 822 (BIA 2016)).

A crime involves moral turpitude if its elements require reprehensible conduct and a culpable mental state. *Matter of Silva-Trevino*, 26 I&N Dec. at 834; *accord Alonzo v. Lynch*, 821 F.3d 951, 958 (8th Cir. 2016). Conduct is "reprehensible" if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Leal*, 26 I&N Dec. 20, 25 (BIA 2012) (citation omitted); *accord Adame-Hernandez v. Barr*, 929 F.3d 1020, 1022 (8th Cir. 2019) (quoting *Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010)).

A culpable mental state requires "some degree of scienter, either specific intent, deliberateness, willfulness, or recklessness." *Matter of Louissaint*, 24 I&N Dec. 754, 756–57 (BIA 2009). Crimes that require specific intent are more likely to be considered to involve moral turpitude because they are committed with the evil intent or depraved mind associated with moral turpitude. *See Matter of Ajami*, 22 I&N Dec. 949, 950 (BIA 1999) ("Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind."); *see also Matter of J-G-P-*, 27 I&N Dec. 642, 650 (BIA 2019) (finding that the crime of menacing involved moral turpitude because it required "the specific intent to cause fear of imminent serious physical injury"); *cf. Matter of Solon*, 24 I&N Dec. 239, 241 (BIA 2007) (stating that simple assault crimes "are generally not considered to be crimes involving moral turpitude . . . because they require general intent only").

However, we have held that "[m]oral turpitude may also inhere in criminally reckless conduct." *Matter of Solon*, 24 I&N Dec. at 240; *see also Matter of Torres-Varela*, 23 I&N Dec. 78, 83 (BIA 2001) (collecting cases and stating that "a specific intent is not a prerequisite to finding that a crime involves moral turpitude"). Recklessness is a sufficiently "culpable mental state for moral turpitude purposes where it entails a conscious disregard of a substantial and unjustifiable risk posed by one's conduct." *Matter of Leal*, 26 I&N Dec. at 23 (collecting cases).

B.  Minnesota Terroristic Threats Statute

At all relevant times, section 609.713, subdivision 1, of the Minnesota Statutes has provided as follows:

> Whoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, vehicle or facility of public transportation or otherwise to cause serious public inconvenience, or in a reckless disregard of the risk of causing such terror or inconvenience may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.  As used in this subdivision, "crime of violence" has the meaning given "violent crime" in section 609.1095, subdivision 1, paragraph (d).[2]

Minnesota model jury instructions distill this offense into the following actus reus and mens rea elements:  (1) a direct or indirect *threat to commit a crime of violence*, which was (2) made with the *intent* to *terrorize* another—*or in reckless disregard* of the risk of causing such terror, *or* with the *purpose* to *cause evacuation* of a building, place of assembly, or facility of public transportation, *or* to *cause serious public inconvenience—or in reckless disregard* of the risk of causing such evacuation or inconvenience. 10 Minnesota Practice, CRIMJIG 13.107; *see also State v. Schweppe*, 237 N.W.2d 609, 613 (Minn. 1975) (reviewing and addressing the "essential elements of this offense").  The statute is patterned after the relevant Model Penal Code section, which remains substantively similar today. *Schweppe*, 237 N.W.2d at 613 (citing Model Penal Code § 211.3 (1971)).[3]

The Minnesota Supreme Court has defined the element of "threat" as a "declaration of an intention to injure another or his property by some unlawful act." *Id.*  The threat is not limited to spoken or written threats and includes "communication" that, when perceived in context, would "have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Id.* (citation omitted); *see also State v. Murphy*, 545 N.W.2d 909, 915 (Minn. 1996) (per curiam).  As the Minnesota terroristic

---

[2]  Subsequent to the date of the respondent's conviction, the Minnesota legislature changed the title of section 609.713 from "Terroristic Threats" to "Threats of Violence." 2015 Minn. Sess. Law Serv. ch. 21 (S.F. No. 1218), art. 1, sec. 109, subd. 10 (West).

[3]  Section 211.3 of the Model Penal Code, titled "Terroristic Threats," provides:

> A person is guilty of a felony of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

threats statute provides, the term "'crime of violence' has the meaning given 'violent crime,'" defined in section 609.1095, subdivision 1, paragraph (d), as "a violation of or an attempt or conspiracy to violate any of [45 specific] laws of this state or any similar laws of the United States or any other state."[4]

The Minnesota statute's two possible forms of scienter are "purpose," which "in this context means aim, objective, or intention," *Schweppe*, 237 N.W.2d at 614, and "recklessness," which "requires deliberate action in disregard of a known, substantial risk," *State v. Bjergum*, 771 N.W.2d 53, 57 (Minn. App. 2009). The term "terrorize" has been construed as meaning "to cause extreme fear by use of violence or threats." *State v. Franks*, 765 N.W.2d 68, 74 (Minn. 2009) (quoting *Schweppe*, 237 N.W.2d at 614). The Minnesota courts have not had occasion to construe the terms "cause evacuation" or "otherwise to cause serious public inconvenience."

Applying the categorical analysis articulated in *Matter of Silva-Trevino* for determining whether a crime involves moral turpitude, we conclude that making terroristic threats in violation of section 609.713, subdivision 1, of the Minnesota Statutes is categorically a crime involving moral turpitude.

## C. Eighth Circuit Case Law

In reaching our conclusion, we do not write on a blank slate. The United States Court of Appeals for the Eighth Circuit, in whose jurisdiction this matter arises, has twice issued precedential decisions holding that in certain instances, the conduct prohibited under section 609.713, subdivision 1, of the Minnesota Statutes constitutes a crime involving moral turpitude. In *Chanmouny v. Ashcroft*, 376 F.3d 810, 814 (8th Cir. 2004), the Eighth Circuit held that moral turpitude necessarily inheres in a violation of this provision where the threat is made with the purpose of terrorizing a victim, stating that "threatening a crime of violence against another person with the purpose of

---

[4] The "crimes of violence" incorporated under Minnesota law include first degree murder (section 609.185); first degree manslaughter (section 609.20); first degree assault (section 609.221, subdivision 1); robbery (section 609.24); and first degree criminal sexual conduct (section 609.342), as well as dangerous crimes that do not include the use of physical force as an element, such as manufacturing methamphetamine in the presence of a child (section 152.137, subdivision 2(a)(1)); kidnapping (section 609.25); child neglect (section 609.378); arson of an unoccupied building (section 609.562); stalking (section 609.749); and shooting in a public transit vehicle (section 609.855, subdivision 5). *Cf. United States v. Sanchez-Martinez*, 633 F.3d 658, 660 (8th Cir. 2011) (stating, in the context of the U.S. Sentencing Guidelines, that "[u]nder Minnesota law, 'crime of violence' as used in § 609.713(1) includes some offenses that do not have as an element the use of physical force against another").

causing extreme fear . . . falls within the category of offenses requiring a vicious motive or evil intent."[5]

More recently, the Eighth Circuit affirmed that acting with reckless disregard of the risk of terrorizing a victim was also "sufficient to satisfy the scienter requirement for turpitudinous offenses." *Avendano v. Holder*, 770 F.3d 731, 735 (8th Cir. 2014). In so holding, the court noted that it had previously found reasonable our determination that crimes involving moral turpitude "encompass offenses committed with a mental state of recklessness" and need not necessarily be accompanied by a vicious motive or a corrupt mind or an "aggravating factor."[6] *Id.* at 735–36 (citing *Franklin v. INS*, 72 F.3d 571, 573 (8th Cir. 1995)).

We understand *Chanmouny* and *Avendano* to stand for the proposition that threatening to commit a crime of violence is also inherently reprehensible when the purpose or natural tendency of the threat is "to terrorize another," regardless of whether anyone is actually terrorized by it. However, the *Avendano* court did not address whether threatening a crime of violence with reckless disregard of the risk of causing terror is "reprehensible conduct," because the petitioner waived that issue. *Avendano*, 770 F.3d at 736. Likewise, the Eighth Circuit has left open whether it is necessarily reprehensible to violate that part of the Minnesota statute that prohibits making threats "with purpose . . . to cause evacuation of a building, place of assembly, vehicle or facility of public transportation or otherwise to cause serious public inconvenience, or in a reckless disregard of the risk of causing such . . . inconvenience." *Id.*; *see also Chanmouny*, 376 F.3d at 812–13.

We hold that the full range of conduct prohibited by section 609.713, subdivision 1, of the Minnesota Statutes entails "reprehensible" conduct.

### D. Threats to Terrorize Another

First, we conclude that the communication of an intent to injure another by use of violence involves sufficiently reprehensible conduct to constitute a crime involving moral turpitude. We have previously held that crimes involving the intentional transmission of threats entail turpitudinous conduct. *See Matter of Ajami*, 22 I&N Dec. at 952; *see also Matter of C-*, 5 I&N Dec.

---

[5] This holding is consistent with the views of other circuits and our own precedent. *See Javier v. Att'y Gen. of U.S.*, 826 F.3d 127, 131 (3d Cir. 2016); *Latter-Singh v. Holder*, 668 F.3d 1156, 1163 (9th Cir. 2012); *Matter of J-G-P-*, 27 I&N Dec. at 644–50; *Matter of Ajami*, 22 I&N Dec. at 952.

[6] The *Avendano* court noted our statement that "when we have held that a 'reckless' mens rea required either serious bodily injury or some other aggravating factor to establish moral turpitude," it has generally been "in the specific context of *assault* offenses." *Avendano*, 770 F.3d at 736 (quoting *Matter of Ruiz-Lopez*, 25 I&N Dec. 551, 554 (BIA 2011)).

370, 376 (BIA 1953) (threats to take property by force); *Matter of G-T-*, 4 I&N Dec. 446, 447 (BIA 1951) (sending threatening letters with the intent to extort money); *Matter of F-*, 3 I&N Dec. 361, 362–63 (C.O. 1948; BIA 1949) (mailing menacing letters that demanded property and threatened violence to the recipient).

We conclude that the transmission of threats to commit a crime of violence, made either with the specific intent to "terrorize" another or with a conscious disregard of a substantial and unjustifiable risk of terrorizing another, is reprehensible conduct. *Matter of Ajami*, 22 I&N Dec. at 950, 952. In *Matter of J-G-P-*, 27 I&N Dec. at 647, we held that menacing under Oregon law is categorically a crime involving moral turpitude, in part because "the level of threatened harm, or magnitude of menace implicit in the threat, is serious and immediate." Similarly, the Minnesota statute at issue here necessarily entails reprehensible conduct, because "terrorizing" has been defined as involving a level of fear that is "extreme," caused by use of violence or threats. *See Javier v. Att'y Gen. of U.S.*, 826 F.3d 127, 131 (3d Cir. 2016) (stating that the purpose of statutes criminalizing terroristic threats is to prevent the harm of "psychological distress that follows from an invasion of another's sense of personal security" (citations omitted)).

In this regard, we clarify that making a threat to commit a crime of violence in violation of Minnesota's terroristic threats statute is a crime involving moral turpitude, even if the threatened crime would not necessarily qualify as a crime involving moral turpitude.[7] The Immigration Judge's

---

[7] In *United States v. Mcfee*, 842 F.3d 572, 574–77 (8th Cir. 2016), the Eighth Circuit found that the term "crime of violence" in the Minnesota statute was not divisible, in the context of determining whether a predicate offense existed under the Armed Career Criminal Act ("ACCA") under the "force clause"—that is, whether the defendant had three previous convictions for a violent felony under 18 U.S.C. § 924(e)(1) (2012). A "violent felony" is defined by the ACCA "to include any federal or state offense punishable by imprisonment of more than one year that[, inter alia,] 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* at 574 (quoting 18 U.S.C. § 924(e)(2)(B)). The Eighth Circuit concluded that the term "crime of violence" was intended to be an element and the list of violent crimes in the statute to be the means of committing that element. *Mcfee*, 842 F.3d at 575. Accordingly, the court did not apply the modified categorical approach in determining whether a "crime of violence" existed.

Previously, before the Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016), a different Eighth Circuit panel had applied the modified categorical approach in determining whether a violation of Minnesota's terroristic threats statute constituted a "crime of violence" under 18 U.S.C. § 16(a) (2012), and thus an aggravated felony under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2012). *Olmsted v. Holder*, 588 F.3d 556, 559–60 (8th Cir. 2009).

Assuming that in this jurisdiction the term "crime of violence" is not divisible, we find that the offense of making terroristic threats encompasses sufficient culpability to be a

analysis centered upon whether moral turpitude inheres in the underlying threatened "crime of violence."[8]  But this overlooks the reprehensibility of a terroristic threat itself, which exists regardless of the particular underlying threatened crime.  As the Third Circuit explained,

> Our focus in determining whether [a terroristic threat] is categorically a crime involving moral turpitude is not the threatened 'crime of violence,' but the communication of the threat and its requisite scienter.  After all, the harm that [a terroristic threat statute] seeks to prevent is not the 'crime of violence,' but rather the consequences of the threat . . . .

*Javier*, 826 F.3d at 131.  We believe this complements the Eighth Circuit's analysis in *Chanmouny* and *Avendano*, which rested on the tendency of a threat to terrorize the victim, rather than on the underlying threatened "crime of violence."  *See id.* at 131–32 (citing *Chanmouny*, 376 F.3d at 814–15).

Our review of Minnesota case law bears out our determination that making terroristic threats with a specific intent or recklessness towards terrorizing another person is reprehensible conduct and that there is no realistic probability that the State would successfully prosecute conduct that is not reprehensible.  *See, e.g.*, *State v. Smith*, 825 N.W.2d 131, 135–37 (Minn. 2012) (upholding a conviction where the defendant's conduct during an ongoing confrontation—waving a knife four feet away from the victim and demanding money—constituted a "threat" to the assault victim in the future if he did not give the defendant money); *State v. Dick*, 638 N.W.2d 486 (Minn. 2002) (upholding a conviction where the defendant threatened to kill the arresting police officers, to find out where they lived, and to "skin" an officer while spitting and trying to bite and kick him); *State v. Begbie*, 415 N.W.2d 103 (Minn. 1987) (upholding a conviction where the defendant telephoned his victims at home and made threats that, unless they assumed his debt, a member of Australian Mafia organization would execute them).

---

crime involving moral turpitude, for the reasons stated above.  The Immigration Judge found that the statute is divisible as to the two mens rea prongs but indivisible as to the term "crime of violence," and he analyzed whether moral turpitude inheres in the particular underlying "crime of violence" in section 609.1095, subdivision 1(d), of the Minnesota Statutes that the respondent threatened to commit.  Because we conclude that a threat to commit any of the listed crimes of violence may be a crime involving moral turpitude even if the threatened crime would not so qualify, we find that analysis unnecessary.

[8]  In addressing Minnesota's "crimes of violence," the Immigration Judge noted that the definition of a "crime of violence" includes a drug possession crime that he found was not a crime involving moral turpitude.  However, in reviewing the State case law, we cannot discern a "realistic probability" that Minnesota would successfully prosecute a threat to possess hallucinogenics under section 152.024, subdivision 2(1) of the Minnesota Statutes, for the purpose of terrorizing another or causing an evacuation or public inconvenience, or with reckless disregard of the risk of causing such terror or inconvenience.

The respondent cited his own case to argue that Minnesota would prosecute conduct that does not involve moral turpitude, but we consider his conviction to be within the State precedent. It is undisputed that the respondent jumped the counter at a Walmart and pointed a pair of scissors at a clerk in an attempt to retrieve his identification card from the clerk, who, suspecting that the respondent was using a fraudulent bank card, was taking down information from his identification card. The respondent's suggestion on appeal, made without any legal or evidentiary support, that the Walmart clerk was "confiscating" his cards "unlawfully" and may have intended to "destroy one or both cards" does not justify, lessen, or eliminate the reprehensibility of his actions.

Nor are we persuaded that the cases cited by the Immigration Judge and the respondent demonstrate a realistic probability that the Minnesota terroristic threats statute would be applied to conduct that is not reprehensible. *See Avendano*, 770 F.3d at 739 (Kelly, J., concurring and dissenting in part) (raising similar concerns). In *State v. Balster*, No. A06-1742, 2008 WL 134984 at *1–2 & n.3 (Minn. Ct. App. Jan. 15, 2008), the defendant, angry about his arrest, threatened to harm the arresting police officer in a recorded phone call and later, when the same officer served the defendant with a forfeiture notice for his truck, told him, "You're a dead [expletive] when I get out!"

In *State v. Sailee*, No. C3-98-1744, 1999 WL 486597, at *1 (Minn. Ct. App. July 13, 1999), the defendant threatened a police officer at the courthouse that he was "going to be hung after this" and later, in the parking lot, flashed a gang sign at him, which an expert witness testified was "meant to show that the threat was serious." Although the Immigration Judge described the defendant's conduct as "vague hand gestures," the court concluded that his "words and his hand gesture, considered together and in context, had a reasonable tendency to cause fear of a future act of violence." *Id.* at *2. Finally, in *State v. Rund*, 896 N.W.2d 527, 530 (Minn. 2017), the defendant tweeted a series of threats to "hunt and kill cops," to find the trooper with whom he had a disagreement during a vehicle stop, and to throw a grenade at police officers. Contrary to the respondent's assertion, these were not mere "sophomoric threats."[9] We consider the conduct in the above cases to be "inherently base, vile, or depraved." *Matter of Leal*, 26 I&N Dec. at 25.

---

[9] The respondent also cited, without further elaboration, *Schweppe*, involving the communication of threats to kill a teenaged boy, and *Bjergum*, upholding the defendant's conviction for recklessly making terroristic threats where he threatened to bring guns to his workplace and open fire. In both cases, the defendant was prosecuted for turpitudinous conduct.

### E. Threats To Cause Evacuation or Serious Public Inconvenience

We further hold that making threats "with purpose . . . to cause evacuation of a building, place of assembly, vehicle or facility of public transportation or otherwise to cause serious public inconvenience, or in a reckless disregard of the risk of causing such . . . inconvenience" is reprehensible conduct. From the beginning of our jurisprudence on "moral turpitude," we have defined that term as a violation of the "duties owed between persons or to society in general." *Matter of Leal*, 26 I&N Dec. at 25; *see also, e.g.*, *Matter of Serna*, 20 I&N Dec. 579, 582 (BIA 1992); *Matter of Danesh*, 19 I&N Dec. 669, 670 (BIA 1988); *accord Adame-Hernandez*, 929 F.3d at 1022.[10]

Here, we find that making terroristic threats under Minnesota law with the specific intent or recklessness to cause evacuation or serious public inconvenience categorically violates the accepted rules of morality and duties owed between persons or to society in general, to an extent that necessarily entails reprehensible conduct. *Cf. Schenck v. United States*, 249 U.S. 47, 52 (1919) (Holmes, J.) (stating that "falsely shouting fire in a theatre and causing a panic" is not constitutionally protected behavior because the words are "used in such circumstances and are of such a nature as to create a clear and present danger"). We have previously held that conspiracy to defraud the United States by impeding or obstructing lawful Government functions is a crime involving moral turpitude. *See Matter of Flores*, 17 I&N Dec. 225, 229–30 (BIA 1980); *Matter of E-*, 9 I&N Dec. 421, 427 (BIA 1961) (collecting cases). The nature of that crime is similar to the respondent's offense in that it entails interference with societal public order serious enough to violate the duties owed to society.

We note that the Minnesota statute requires either evacuation or "serious" public inconvenience, which ensures that threats resulting in minor societal interference are not criminalized. Indeed, our review of Minnesota case law indicates that convictions that could fall under this prong of this statute involve, at minimum, reckless disregard that deployment of significant public resources would result from the violators' actions. *Cf. State v. Tanis*,

---

[10] While the precise formulation has changed, the concept that crimes involving moral turpitude encompass violations of duties to society has remained constant. *See, e.g.*, *Matter of Serna*, 20 I&N Dec. at 582 (stating that the Attorney General defined moral turpitude as "anything done *contrary to justice,* honesty, principle, or good morals; an act of baseness, vileness or depravity in the private and *social duties* which a man owes to his fellow man, or to *society in general* contrary to the accepted and customary rule of *right and duty between man and man*" (quoting 37 Op. Att'y Gen. at 294)); *Matter of Danesh*, 19 I&N Dec. at 670 (stating that moral turpitude "refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general"); *Matter of G-*, 1 I&N Dec. 73, 76 (BIA, A.G. 1941) (quoting 41 Corpus Juris 212).

247 S.W.3d 610, 614–15 (Mo. Ct. App. 2008) (affirming a conviction under an analogous terroristic threats statute where the defendant made a false report that explosives were in his parked truck in the middle of a college campus "with reckless disregard of the risk of causing the evacuation of [the] University."). For example, in *State v. Morris*, 609 N.W.2d 242, 247 (Minn. Ct. App. 2000), the appeals court upheld a conviction under the Minnesota statute where the defendant precipitated a lengthy "standoff" with dozens of police officers dispatched to address the hostage situation he created by barricading himself inside a house and threatening to shoot officers if they entered, forcing the evacuation of residences and creating an immediate risk of physical harm to police officers and his neighbors.

Again, we are not persuaded that the cases cited by the Immigration Judge and the respondent demonstrate a realistic probability that Minnesota would successfully prosecute conduct that is not reprehensible under the statute. In *In re J.P.M.*, No. C9-99-1760, 2000 WL 665682, at *1–3 (Minn. Ct. App. May 23, 2000), a juvenile told students that he was bringing a gun to school, which he had threatened to bomb, and he knew or had reason to know that his comments might cause terror or evacuation of the school because he was aware of the Columbine High School shooting the day before. *Id.* at *3.[11]

Moreover, while these convictions fall under the "evacuation" or "serious public inconvenience" prong of the statute, it is significant that each conviction also involved a threat to terrorize a victim or victims. Neither the Immigration Judge nor the respondent has identified, and we have not found, any Minnesota case where the conviction under section 609.713, subdivision 1, did not also involve a threat made with either the purpose to terrorize or conscious disregard of a substantial and unjustifiable risk of terrorizing, that is, causing extreme fear. *See Matter of Lopez-Mesa*, 22 I&N Dec. 1188, 1196 (BIA 1999) ("The finding of moral turpitude . . . results from a building together of elements by which the criminalized conduct deviates further and further from the private and social duties that persons owe to one another and to society in general."). Clearly, terrorizing a neighborhood or school community is at least as reprehensible as terrorizing an individual. *Cf. Matter of McNaughton*, 16 I&N Dec. 569, 574 (BIA 1978) ("Intent to defraud the investing public, which is an entire segment of society, is at least as heinous as intent to defraud an individual or the Government . . . ."). Thus,

---

[11] Similarly, in *In re M.J.S.*, No. C3-00-76, 2000 WL 1015886 (Minn. Ct. App. July 25, 2000), a juvenile was witnessed writing the words "Bomb on Monday" on the locker room walls in the wake of the Columbine High School shooting and two prior school evacuations following bomb threats. Despite his claim that this writing was nothing more than a "joke or a flippant remark," the court found that he recklessly disregarded the terror his statement would cause under the circumstances. *Id.* at *2. Although that case involved a charge under subdivision 2 of section 609.713, it is nevertheless instructive. *Id.* at *1.

we find no realistic probability that the Minnesota statute would successfully be used to criminalize conduct that is not reprehensible. We therefore hold that the Minnesota terroristic threats statute categorically involves reprehensible conduct that is "contrary to accepted rules of morality and the duties owed between persons or to society in general." *Chanmouny*, 376 F.3d at 812 (quoting *Matter of Ajami*, 22 I&N Dec. at 950).

Finally, we note that in his motion to terminate, the respondent cited cases that did not result in a successful prosecution, either because the case never proceeded beyond charging or the conviction was ultimately vacated by a reviewing court for insufficient evidence. *See State v. Thulin*, No. K1-01-2048, 2002 WL 34091879 (Minn. Dist. Ct. Mar. 26, 2002); *see also State v. Graf*, No. A11-617, 2012 WL 987282 (Minn. Ct. App. Mar. 26, 2012). Such evidence is not sufficient to demonstrate a realistic probability. *See Matter of Mendoza Osorio*, 26 I&N Dec. 703, 707 & nn.3–4 (BIA 2016) (providing that only evidence of a successful prosecution establishes a realistic probability of prosecution and that a conviction vacated on appeal or evidence regarding the initiation of charges is insufficient).

In sum, having considered the case law implementing the "terrorizing," and "evacuation or . . . serious public inconvenience" prongs of section 609.713, subdivision 1, we are convinced that moral turpitude inheres in the least culpable conduct that has a realistic probability of being prosecuted under the statute. A violation of the statute, which entails making threats to commit a crime of violence with the purpose or reckless disregard of terrorizing another or of causing an evacuation or other serious public inconvenience, is categorically a crime involving moral turpitude.

## F. Remand

The respondent has filed a motion to remand and to terminate his removal proceedings, and the DHS has lodged an additional charge of removability on appeal. We will remand the record for further proceedings to consider the respondent's removability based on the original charges and any amended charges. On remand, both parties may proffer evidence of the current status of the respondent's criminal convictions and any other admissible evidence relevant to the issue of removability. In view of our disposition, we need not now address the respondent's challenge to the Immigration Judge's decision denying his applications for relief from removal.

**ORDER:** The appeal of the Department of Homeland Security is sustained and the decision of the Immigration Judge is vacated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.